Long and others, Respondents, vs. Davidson, imp., Appellant.

*September 24 — October 14, 1890.*

*Logs and timber: Conversion: Estoppel: Evidence.*

1. Plaintiffs contracted to sell certain lands to the defendant T., giving him the right to cut the timber thereon, the logs, however, to remain their property until full payment of the purchase price. The contract provided that T. should place a certain mark upon the logs. T. delivered some of such logs, with others cut from other lands, to the defendant D., who converted them to his own use and, in an action for the conversion, claimed that plaintiffs were estopped to assert their ownership as against him because the mark which they had caused to be placed upon such logs was the same as his private recorded log mark, and their logs were, therefore, not distinguishable from others rightfully cut for him by T. It did not appear that plaintiffs had any notice that such mark was D.'s recorded log mark, and the evidence was conclusive that D. was not misled by the mark on their logs, and that he knew all about their contract with T. before he obtained possession of such logs. *Held,* that plaintiffs were not estopped, but were entitled to recover the value of the logs, not exceeding the amount of the unpaid purchase money due from T.

2. The insolvency of T. before the commencement of the action did not affect plaintiffs' right to recover from D., although for a long time prior to such insolvency T. had been in default upon the land contract and plaintiffs had not sued him thereon.

3. The contract between plaintiffs and the defendant T. was admissible in evidence as against the defendant D.

APPEAL from the Circuit Court for *Jackson* County.

Action for the conversion of a quantity of pine saw-logs of the alleged value of $4,800, which had been cut by the defendant Thompson upon the plaintiffs' lands, and which are alleged to have been, at the time of their conversion by the defendants, in the possession of the plaintiffs on Levis creek in the town of Albion, Jackson county.

The defendant Thompson did not answer the complaint. The defendant *Davidson*, besides a general denial, alleged that by a written contract made in October, 1886, the said Thompson agreed to deliver to him six million feet of pine logs, to be cut from certain described lands (not including any of the plaintiffs' lands) during the following winter, to be hauled to convenient landings on Levis creek, and to be driven into Black river at the mouth of said creek on the first waters in the spring of 1887; that said logs were to be marked with *Davidson's* private recorded mark, thus: end mark A D V, bark or side mark, N Y X X X, and were to be the property of *Davidson* as fast as they were cut; that Thompson had no authority to cut or put in for *Davidson* any logs bearing such marks except such as were to be cut from the lands described, and if any logs cut from plaintiffs' lands and bearing said marks were put into Levis creek, they were cut and put in and intermingled with *Davidson's* logs without his consent or permission, and were so placed and put in with *Davidson's* logs as to be unavoidably driven out of Levis creek and into Black river; that *Davidson*, not knowing that any such logs were put in, may have, as of necessity, caused or allowed them to be floated into Black river along with his other logs, but that he had in no way exercised authority, control, or ownership over any logs or timber whatever, coming from Levis creek, except such as were marked with the mark aforesaid, which Thompson was to put upon *Davidson's* logs.

Before the trial commenced *Davidson* asked leave to amend his answer by setting up the fact that, prior to the commencement of the action, Thompson had made a voluntary assignment for the benefit of his creditors. The court refused to allow the amendment.

The jury returned a special verdict to the effect that 900,000 feet of the plaintiffs' logs came to the possession of the defendant *Davidson;* that such logs were worth $5 per thousand feet; that the value of the timber before cut — the stumpage — was $2.25 per thousand feet; and that $1,827.64 of the purchase money of the lands from which such logs were cut remained unpaid and due the plaintiffs. Upon this verdict judgment was rendered in favor of the plaintiffs for $1,827.64 and costs. The defendant *Davidson* appealed. Other facts are stated in the opinion.

For the appellant there were briefs by *Losey & Woodward* and *Fruit & Brindley,* and oral argument by *G. M. Woodward* and *John Brindley.*

For the respondents there was a brief by *Bleekman, Tourtellotte & Bloomingdale,* and oral argument by *A. E. Bleekman* and *F. A. Bloomingdale.*

COLE, C. J. It cannot well be denied that the plaintiffs originally owned the timber from which the logs in controversy were cut. They were the owners of the lands and, of course, of the standing timber upon them. In March, 1887, they entered into the contract with Thompson by which they agreed to sell the lands to him for $2,000, and gave Thompson the right to enter upon the lands, and cut the timber into saw-logs, and haul the logs to Levis creek, and bank the same; but the contract provided that the logs should be and remain the property of the plaintiffs until the full performance of the contract by Thompson, or until the $2,000 were paid. The contract provided how the logs cut from these lands should be marked; that is, for a bark or side mark, with the letters N Y X, and for an end mark,

with the letters A D V, stamped thereon, and the letter P was to be marked on the end with chalk. It is not claimed that this chalk mark was put on the logs, but the other marks were put on, and it is said that they were the same marks as Thompson put upon the logs which he furnished on his contract made with the defendant *Davidson* in October, 1886. In fact, under this latter contract, the logs were to be marked A D V for the end mark, and N Y X X X for the side mark, and, for convenience, it was verbally agreed that two X's should be omitted from the side mark, and these two letters were left off from nearly all the logs which were delivered on the *Davidson* contract; so the logs which were cut from the plaintiffs' lands, and those under the *Davidson* contract, could not be distinguished from each other by the marks. The logs were all banked upon the same stream, and were intermingled in running and coming to the possession of *Davidson*. Indisputably *Davidson* has had logs which belong to the plaintiffs, which were cut from their lands, and why should he not pay for them? We perceive no reason or principle of law, which, upon the established facts, exonerates him from paying at least to the extent of the unpaid purchase money due for the lands from which the logs were cut, and this is all they did recover in the action.

But it is said that the acts and conduct of the plaintiffs have been such as ought, both in law and equity, to estop them from asserting ownership in the logs as against *Davidson*. It is insisted they should not have authorized the logs cut from their lands to be marked with the private recorded log-mark of *Davidson*, so that the different logs could not be readily distinguished. In answer to this objection it is said the evidence fails to show that the plaintiffs knew what *Davidson's* log-mark was, or that they authorized it to be placed on their logs; and such is the effect of the testimony, as we understand it. There is no ground for saying that the plaintiffs' logs were marked with *Davidson's* private re-

·corded mark, or that they knew anything about his contract with Thompson. As we have said, if the plaintiffs had read that contract, they would have seen that it clearly provided that the logs furnished under it should bear a different mark from the one which was placed on their logs. What *Davidson's* legal recorded log-mark was, when the plaintiffs made their contract with Thompson, does not satisfactorily appear from the evidence. He claims that it is the same as the mark authorized to be put on the plaintiffs' logs, but that fact is not established by the certificate of the lumber inspector which was introduced in evidence. *Davidson* himself testifies that he had recorded and used a mark in his contract,— N Y X X X, side mark,— but when he recorded a different side mark does not appear. The presumption is very strong that his recorded side mark was N Y X X X when he made·his contract with Thompson for the delivery of the 6,000,000 feet, because that was the side mark which was to be placed on the logs under that agreement. So we can see no ground for saying that the plaintiffs are estopped from asserting their rights in the logs, because of the manner they were marked. It certainly does not appear that they had any notice or knowledge that the mark put upon them was *Davidson's* recorded log-mark, and the inference is very cogent that it was not; and we think the evidence is conclusive that *Davidson* was not misled by the mark on the plaintiffs' logs, and that he knew all about their contract with Thompson before he obtained possession of them. He knew all about the plaintiffs' title, and that the logs would remain their property until the purchase price of the lands was paid. He does not therefore stand before the court, and cannot be regarded, as an innocent purchaser of the plaintiffs' property for value; nor have the plaintiffs done any act which should preclude them from asserting their ownership of the logs.

We are at a loss to see the materiality of the proposed

amendment, in regard to the assignment and insolvency of Thompson before the commencement of this action. How can that fact affect the plaintiffs' right to recover the value of their property? It is true Thompson was in default on his contract with the plaintiffs. He had failed to make payments as that contract provided, but the plaintiffs had not brought suit against him as they might have done; but how this forbearance on their part raised any equities in favor of *Davidson* we cannot understand. It is sufficient to say that *Davidson* knew all about the plaintiffs' claim to the logs before they came into his possession. He had ample opportunity to protect himself against loss by reserving money on his contract with Thompson. It does not appear that he has been in any way injured by the delay in suing Thompson.

We are also unable to see how the defendant could have been prejudiced by the admission in evidence of the contract between Thompson and the plaintiffs. That contract would show that Thompson was not a trespasser in cutting their timber; it would also show the extent of their interests in the logs. The plaintiffs did not recover the full value of the logs, but only the amount of the unpaid purchase money due on this contract. That was about the value of the stumpage, as found by the jury. Many of the questions in this case were considered and passed upon in *Lillie v. Dunbar*, 62 Wis. 198, and need not be further discussed. It is very clear to our minds that Thompson could give *Davidson* no greater or better title to the logs than he had under his contract, and, as the logs were to remain the property of the plaintiffs until the lands were paid for, it seems plain they are entitled to recover to the extent of the purchase money. We see no error in the case, and affirm the judgment.

*By the Court.*— Judgment affirmed.