## ZELDA TUNNELL v. STATE.

No. A-3932.   Opinion Filed July 26, 1923.
(216 Pac. 951.)

(Syllabus.)

1. **Trial—Error for Judge to Relinquish Control Over Proceedings.** The presence of the judge is essential to the organization of the court; and where, in the progress of a criminal trial, the judge temporarily relinquishes control over the proceedings or abandons the trial, a judgment of conviction will be reversed.

2. **Same.** In a criminal trial, after the retirement of the jury to deliberate, and until the verdict is rendered or the jury discharged in due course of law, it is the duty of the judge to be where he can respond to any call for the exercise of his judicial authority, and thus give protection and security to all parties interested or concerned in the result of the trial.

3. **Same—Verdict Received in Absence of Judge Held Nullity.** The reception of a verdict is a judicial act which cannot be delegated; and where, in a prosecution for a misdemeanor, the jury having retired to deliberate of their verdict, the judge became incapacitated to further proceed with the trial on account of illness, and the following day by agreement of counsel a member

of the bar received the verdict, held, that the verdict so received is a nullity, and no judgment of conviction could be lawfully pronounced upon it by the court.

Appeal from County Court, Payne County; Wilberforce Jones, Judge.

Zelda Tunnell was convicted of manufacturing intoxicating liquors, and she appeals. Reversed.

P. D. Mitchell and W. M. Taylor, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. The appellant, Zelda Tunnell, was convicted on a charge that she did unlawfully manufacture whisky, and in accordance with the verdict of the jury she was sentenced to be confined in the county jail for 30 days, and to pay a fine of $100.

The evidence shows that the defendant resided with her husband and children on their farm south of Yale, near the Cimarron river; that the sheriff and three deputies found a still in operation not far from the home of the defendant. Three deputy sheriffs testified that when they first saw the defendant she was 15 or 20 feet from the still, and was walking towards it. Sheriff Lilly testified: "Mrs. Tunnell was poking the fire under the still when I first saw her."

As a witness in her own behalf the defendant testified:

"Wade Tunnell is my husband. I was in the truck patch near the river about 200 yards east of the house when I first saw the officers. I was picking tomatoes and saw some smoke in the brush; looked like it was near a haystack; and I walked over there and met Sheriff Lilly and the other officers. I had never seen the still before that time. I never did make any whisky or do anything in the way of operating the still. It was not on our land."

It is contended by counsel for appellant that the judgment of conviction should be reversed for the following reason: Error in overruling the motion in arrest of judgment based on the ground that the verdict of the jury was returned in the absence of the trial judge. The record shows that the trial commenced November 8, 1920, and the following afternoon the jury retired to consider of their verdict. While the jury were deliberating Judge Jones became seriously ill. The next morning he was unable to return to the courthouse. About 10 a. m. the jury informed the bailiff that they were ready to report, a messenger was sent to notify the trial judge, and the judge sent word to the court clerk that he was not in condition to hold court, and advised that the jury be discharged, and thereupon the county attorney and W. M. Taylor, one of the attorneys for the defendant, in the absence of the defendant, agreed that John P. Hickam, a member of the bar, should act as special judge to receive the verdict of the jury in the absence of Judge Jones. Judge Hickam took the bench, and the jury were conducted into the courtroom. They returned their verdict and were discharged by Judge Hickam. The Attorney General confesses error, saying:

"There is no law that we can find that authorizes a change of judge during the trial, and certainly there is none that would authorize a member of the bar to receive the verdict of the jury, order it read and filed, and make an order discharging the jury."

In a legal sense the judge of a court is the court, and there can be no court without a judge. In Allen v. State, 13 Okla. Cr. 533, 165 Pac. 745, L. R. A. 1917 E. 1085, it is said:

"Every person charged with crime is entitled to a fair trial in conformity to the laws of the state, and it is a duty resting upon the courts to see that this guaranty conferred by the laws upon every citizen is upheld and sustained. In many cases this

court has held that it is the duty of the presiding judge at criminal trials to be present during each and every stage of the proceedings before him, and, when the record affirmatively discloses that he lost control of the proceedings by reason of his absence from the bench during the progress of the trial, a judgment of conviction will be reversed. Stiles v. State, 9 Okla. Cr. 596, 132 Pac. 822; Wright v. State, 7 Okla. Cr. 280, 123 Pac. 434; Cochran v. State, 4 Okla. Cr. 380, 111 Pac. 974. It is a fundamental principle of law that judicial power cannot be delegated, and a verdict of conviction, to be of any validity, must be delivered in open court.

"Under the following provisions of our Procedure Criminal, the presence of the presiding judge during the entire course of the trial is essential, and the receiving of the verdict is a judicial act, which cannot be delegated. * * * 'After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called.' (Comp. Stats. 1921, § 2730.) * * * While the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for any purpose connected with the cause submitted to them until verdict is rendered or the jury discharged.' (Section 2734.) 'When there is a verdict of conviction in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion, and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered,' and 'if the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it.' (Sections 2742 and 2743.) 'When a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation.' (Section 2745.)

"Under these provisions, after the retirement of the jury to deliberate and until a verdict is rendered, or the jury discharged in due course of the law, it is the duty of the presiding judge to be where he can respond to any call for the exercise of his judicial authority, and thus give protection and security to all parties interested or concerned in the result of the trial, and such judge cannot delegate these judicial functions to another, even with the consent of the parties. It is well settled that in prosecutions for felonies the continuous presence of the judge during the entire course of the trial is indispensible, and that, whether objection be or be not made, a conviction will be reversed in the case of his improper absence."

In McClure v. State, 77 Ind. 287, it is held that the reception of a verdict is a judicial act which cannot be delegated, and where after a cause has been given to the jury the judge, desiring to go home, designates an attorney of the court to receive the verdict, which is done, the verdict is a nullity, and the fact that the defendant assented thereto does not give it validity. See, also, Ellerbe v. State, 75 Miss. 522, 22 South. 950, 41 L. R. A. 569; York v. State, 91 Ark. 582, 121 S. W. 1070, 18 Ann. Cas. 344; Skaggs v. State, 88 Ark. 62, 113 S. W. 346, 16 Ann. Cas. 622; O'Brien v. People, 17 Colo. 563, 31 Pac. 230; Meredeth v. People, 84 Ill. 479; Durden v. People, 192 Ill. 493, 61 N. E. 317, 55 L. R. A. 240; People v. McPherson, 74 Hun, 336, 26 N. Y. Supp. 236; State v. Carnagy, 106 Iowa, 487, 46 N. W. 805. On principle and reason the determining test is whether the judge has lost control of the proceedings. If he has done so, the integrity of the trial is destroyed.

The record in this case shows that the jury were without any judicial supervision whatever from the time the jury retired to deliberate on their verdict until they returned their verdict the following day, and then, by consent of counsel, a member of the bar assumed to act as special judge for the purpose of receiving the verdict and discharging the jury.

Applying the well-established rules of law enunciated in the cases quoted, it is our opinion that the verdict of the jury was a nullity, and that no judgment of conviction could be lawfully pronounced on it by the court.

The remaining assignments of error need not be considered.

For the reasons stated, the judgment is reversed.

MATSON, P. J., and BESSEY, J., concur.