## L. O. SCRUGGS v. STATE.

No. A-5211.   Opinion Filed March 29, 1926.
(244 Pac. 838.)

Wright & Gill, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county on a charge of having illegal possession of narcotics, and was sentenced to serve a term of three years in the state penitentiary and to pay a fine of $500. The evidence is largely circumstantial; its sufficiency to sustain the verdict and judgment is not questioned. It is unnecessary to recite the facts proven. Three assignments of error are argued for the reversal of the judgment: First, that the court erred in giving instruction No. 7. Second, that the jury at the time of making a view of the premises received evidence out of court. Third, that the verdict was received by a judge other than the one before whom the case was tried.

These assignments will be considered in the order presented. The first assignment is predicated upon the court's charge as follows:

"Should you find the defendant guilty of the crime charged against him it will be your duty to fix the punishment therefor, which shall be a fine of not less than $500 nor more than $5,000, and by imprisonment in the state penitentiary for not less than one year nor more than seven."

This instruction is erroneous in naming the minimum punishment at both fine and imprisonment. The punishment fixed by the statute (section 8888, Comp. St. 1921), under which the prosecution was had, is ambiguous, but

this court considering that statute in the case of Ex parte Clarke, 30 Okla. Cr. 259, 236 P. 66, held that the punishment of fine or imprisonment is in the disjunctive, and that either a fine or imprisonment or both might be imposed. However, the jury here by their verdict fixed the punishment at three years in the penitentiary and assessed the minimum fine, clearly evidencing that it was their intention that defendant should be sentenced to at least three years in the penitentiary. We cannot say, however, that if they had been correctly instructed they might not have omitted to assess any fine. The judgment should therefore be modified by remitting the entire fine assessed.

Upon the second assignment it appears that after the jury had retired to consider their verdict they were brought into court, and the court stated that he understood they desired to view the house where the box introduced in evidence was said to have been found. The jurors answered that they did. It was then agreed by counsel for the state and the defendant that such view might be made. The court admonished them correctly, and one of the attorneys for defendant and the assistant county attorney with two bailiffs went with the jury. They viewed the premises and returned to their jury room, and soon after agreed upon a verdict.

In the motion for a new trial the ninth ground is that the jury received evidence out of court. The motion is supported by affidavit of one of the attorneys for defendant, the principal part of which is as follows:

"* * * Affiant, in company with H. T. Tumilty, assistant county attorney of Oklahoma county, went with the jury in said case to the premises located on the southwest corner of the intersection of Grand and Central avenue, Oklahoma City, Oklahoma, and there was pointed out to the jury the house in which the officer, Brigman, testified he was concealed immediately prior to the ar-

rest of the defendant on August 19, 1923; that there was a woman in the yard of said house, and that the bailiff in charge of the jury asked her some questions out of the hearing of the jury, and she answered in a loud voice in the hearing of the entire jury. 'Yes, I live here, and I will show you right where the officer sat by the window'; that the assistant county attorney then informed said woman that she must not talk or make any comment in the presence of the jury, but that she went into said house with said jury and in the presence of said jury stated to some man in the house, 'This is the jury that is trying the negroes caught here last summer,' or words in substance to that effect, and further stated to the jury, 'This is the room'; and later when one juror mentioned to another juror that they had better ascertain the present location of the telephone in said house, that said woman picked up a telephone in a little hallway and opened a door and set it around through the door on a little stand in another room, and stated, 'Here is where the telephone was setting, I kept it setting right on this little stand'; that other statements were made by said woman in the presence of said jury, the exact nature of which affiant does not recall. * * *''

In addition, oral evidence was taken on the motion in effect about as set out in the affidavit. No objection was made to the proceeding until motion for a new trial was filed. Section 2714, Comp. St. 1921, is as follows:

"When in the opinion of the court, it is proper that the jury should view the place in which the offense was charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of proper officers, to the place which must be shown to them by a person appointed by the court for that purpose, and the officers must be sworn to suffer no person to speak to or communicate with the jury, nor to do so themselves, on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

Under this statute the court was authorized to permit the jury under the restrictions therein named to view

the place. This statute or one of similar import is a part of the law of many states, and under it it is generally held that the jury should hold no communication with others while taking the view of the place pointed out by persons authorized to do so. It is improper to take testimony while making a view, and persons present should not be permitted to explain the locus in quo. 16 C. J. 827.

The Supreme Court of the territory in considering this statute (section 5222, Oklahoma Statutes of 1893), in the case of Hays v. Territory, 7 Okla. 15, 54 P. 300, went into the question somewhat fully, and in an opinion by Burwell, J., reversed the case, where evidence was taken at the place of view. There, however, the court, over the objection of the defendant, compelled him to accompany the jury, the court, and court reporter, and the court took the evidence of a witness at the place of homicide; to all of which exceptions were saved at the time. This court in the case of Starr v. State, 5 Okla. Cr. 440, 115 P. 356, considered, at length, the authorities upon the matter of view by the jury, and, while the question of a statement made by any outside person was not in that case, held in effect that the statute is not repugnant to the Bill of Rights conferring upon an accused the right to be confronted with the witnesses against him, but that it gives an accused the privilege of waiving such constitutional right. We do not deem it necessary to again review the authorities. The defendant here agreed that the jury should view the place. He made no request to accompany them, and agreed that one of his counsel with one of the counsel for the state should accompany the jury. No objection to any proceeding had was made until after the verdict was returned. The statement of the person shown to have been made at the place of view was improper, but it was of a trivial character, harmless, and does not require a reversal.

Lastly, it was contended that there was error in the proceedings in that the case was tried before Hon. C. L. Price, district judge, and that by agreement of the state and defendant, expressly given, the verdict was received by Hon. George W. Clark, another judge of said court, citing in support of this contention: 16 C. J. 1178; In re Patzwald, 5 Okla. 78, 50 P. 139; Cochran v. State, 4 Okla. Cr. 379, 111 P. 974; Wright v. State, 7 Okla. Cr. 280, 123 P. 434; Stites v. State, 9 Okla. 596, 132 P. 822; Tunnell v. State, 24 Okla. Cr. 176, 216 P. 951; Allen v. State, 13 Okla. Cr. 533, 165 P. 745, L. R. A. 1917E, 1085.

In none of the cases cited is the question here directly determined. It is not absolutely mandatory that the judge who tried the case be the judge who receives the verdict. The judge who tried the case should receive the verdict, but the receiving of the verdict by another judge of the same court, with the express consent of defendant, is a waiver of the irregularity of the proceeding. In the case of Tillman v. State (Fla.) 19 Ann. Cas. 94, it is said:

"An objection to the jurisdiction of a special or substitute de facto judge may be waived either by the consent of the parties, or by proceeding in the cause, before such judge, without making objection to his jurisdiction."

This is supported by decisions from a great many of the states.

In the case of State v. Holmes, 40 P. 735, 12 Wash. 169, it was held:

One "knowing the ineligibility of the judge who tries his case, and yet submitting himself to the jurisdiction, being ready to avail himself of the action of the court if the verdict should be in his favor, he should not, in justice, be permitted to object to such jurisdiction when it eventuates that the verdict is against him. Such a practice would tend to defeat justice, rather than to secure to the defendant his substantial rights."

See, also, Ellington v. State, 7 Okla. Cr. 252, 123 P. 186.

Upon the consideration of the entire record we find no error requiring a reversal. The judgment will be modified by remitting the fine of $500 assessed; otherwise the case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.