**Loyd GRANT, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant
in Error.**

No. A–13356.

Court of Criminal Appeals of Oklahoma.

Oct. 9, 1963.

Rehearing Denied Oct. 21, 1963.

James O. Braly, Durant, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Loyd Grant, hereinafter referred to as the defendant, and his wife, Dorothy Irene St. Clair Grant, were charged jointly with the premeditated murder of Louis Robinson. Defendant secured a severance, was tried separately by jury, who found him guilty of the included crime of Manslaughter in the First Degree and assessed his punishment at Fifty Years in the Oklahoma State Penitentiary. From said judgment and sentence, defendant appeals to this Court.

Evidence adduced at the trial discloses that during the evening hours of September 8, and until shortly before midnight on September 9, 1962, the defendant, his wife, and three other persons, including the deceased, had been drinking beer and whiskey in a succession of bars and beer taverns in and around the city of Durant (Bryan County), Oklahoma. Apparently during the later hours of the evening in question, the defendant and the deceased engaged in an argument and brief physical encounter at one of the taverns visited. There seems to have been further quarreling between defendant's wife, Irene Grant and Louis Robinson after the earlier encounter. Following this, Ocie Shelton, Billie Joe Williams (both witnesses at the trial) and Robinson left the Grant car at the Rainbow Tavern and the defendant and his wife drove away. A short time later the three emerged from the tavern and proceeded to get into Robinson's truck to drive back to town. At this

time the Grants pulled alongside the truck, and testimony of witnesses was to the fact that Mrs. Grant ordered Robinson to get out of his truck. As Robinson walked toward the Grant car, the defendant pointed a shotgun from the window of the car and shot Robinson in the face.

Upon the trial, defendant's theory was one of self-defense. The testimony as to the actual occurrence just prior to and at the time of the shooting, is conflicting.

The defendant took the stand on his own behalf and testified that Robinson, the deceased, approached the car with an iron pipe in his hand. The testimony of three defense witnesses was admitted during the proceedings in order to establish and corroborate the defendant's testimony. To repudiate said testimony State's witnesses, Ocie Shelton and Billie Joe Williams were called in rebuttal.

■ In his brief, the defendant apparently questions the verdict rendered under the evidence presented. We have ruled in numerous decisions that:

"Where the evidence is conflicting and different inferences can be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts". McCluskey v. State, Okl.Cr., 372 P.2d 623.

■ Defendant's brief contains seven assignments of error, although in his Motion for New Trial he advances only three contentions for reversal of the judgment and sentence. Since this Court has ruled that errors, not fundamental or jurisdictional in character will not be considered on appeal unless they are incorporated in the Motion for New Trial and the ruling thereon excepted to and assigned as error. Parker v. State, 96 Okl.Cr. 323, 253 P.2d 1085; Anglin v. State, 92 Okl.Cr. 430, 224 P.2d 272, and Langley v. State, 53 Okl.Cr. 401, 12 P. 2d 254, we shall consider only those errors previously urged in the lower court and now before this Court on appeal.

It is the first contention of the defendant that the trial court committed reversible error when, during the course of the trial, the judge left the bench momentarily, without declaring the court to be in recess, and by so doing, prejudiced defendant's substantial rights.

The instance of which the defendant complains occurred after the direct examination and cross-examination of Winnie Mae Ford, defense witness. On page 360 of the case-made the following is noted:

"THE COURT: Just a moment. (The Court leaves the Bench and the Courtroom for a moment, and then returns) Ladies and Gentlemen of the Jury, I have another matter to take up here at this time if you will, go with your bailiffs into this other room so you will be out of the presence and the hearing of this court at this time. And the same admonition I've given you before still extends during this period of time."

After the retirement of the jury, the witness was interrogated by the Court, and it is noted that at this time counsel for defendant not only did not request a mistrial, but participated actively in the examination of the witness by the Court. The witness was excused and the jury called back into the courtroom, at which time the Court was recessed for lunch. After the noon recess, upon reconvening the proceedings, the Court dictated the following into the record: (CM-370)

"BY THE COURT: (Out of hearing of Jury) Let the record show that Mr. Braly (Counsel for Defendant) was asked if he wanted a mistrial declared by the Court and he answered that he did not."

The question of prejudice to defendant based upon the above cited incident was not raised by his counsel until the hearing upon a Motion for New Trial.

Defendant cites many cases in support of his argument. However, a close scrutiny of these decisions, brings to light many interesting facts.

In each cause, cited by defendant the factual situation differs from that presented

in the case at bar. In the Cochran Case, Cochran v. State, 4 Okl.Cr. 379, 111 P. 974, the presiding judge left the courtroom for approximately 10 minutes and closed the door. Although admonishing the trial courts that it is "their duty to remain in control of the trial during every moment that court is open." This Court Affirmed the conviction. In the cited case of Wright v. State, 7 Okl.Cr. 280, 123 P. 434, the trial judge vacated the bench and walked to the rear of the courtroom during the prosecution's argument to the jury, and was so far away that he could not hear or observe the proceedings.

The distinction between the case before the Court now; and those previously decided is clear. In this case the record reveals that the Judge left the bench for a period (according to testimony presented by defendant) of from 30 seconds to one minute. The door to the court was not closed, and the trial judge was within sight and hearing distance of the courtroom. Further, and most important, in each case reversed and remanded by this Court on this contention, proceedings were actually in progress, i. e. Argument of counsel, Ridenour v. State, 94 Okl.Cr. 92, 231 P.2d 395; Stites v. State, 9 Okl.Cr. 596, 132 P. 822.

Receiving of a verdict, Tunnell v. State, 24 Okl.Cr. 176, 216 P. 951.

In our opinion the case on appeal does not approach the aggravated circumstances of those decisions. Here the judge merely absented himself momentarily and during this period (substantiated by testimony taken at the Motion for New Trial) no proceedings took place and no one approached or talked with the jurors.

■ From a careful examination of the record before us and an extensive search of the authorities cited above, we find the decision rendered in the case of Blagg v. State, 36 Okl.Cr. 337, 254 P. 506, appearing in the body of the opinion, to be controlling. In the Blagg case, we stated in the body of the opinion:

" 'In many cases this court has held that it is the duty of the presiding judge at criminal trials to be present during each and every stage of the proceedings before him, and when the record affirmatively discloses that he lost control of the proceedings by reason of his absence from the bench during the progress of the trial, a judgment of conviction will be reversed.' (Allen v. State, 13 Okl.Cr. 533, 165 P. 745, L.R.A.1917E, 1085).

"The record in this case does not sustain the contention that the trial judge was absent from the courtroom and had lost control of the proceedings. * * * but was in hearing of anything that occurred and was in a position to rule on any matter that might have arisen at the time he stepped into his chambers. ERROR WILL NOT BE PRESUMED, BUT THE RECORD MUST AFFIRMATIVELY SHOW THAT THE ERROR COMPLAINED OF WAS OF A CHARACTER SUFFICIENT TO SHOW THAT APPELLANT WAS NOT GIVEN A FAIR TRIAL." (EMPHASIS OURS)

■ In our opinion, the error, if any, is not of sufficient character to require reversal of this cause under the facts presented herein.

As his second contention for reversal, defendant asserts that he was not properly informed of the names of all witnesses who would testify for the State. Specifically the defendant objects to the admittance of testimony of Dr. Robert E. Engles, whose name appeared on the first list of witnesses served upon defendant, October 1, 1962, but did not appear on the second list served, November 28, (six days prior to commencement of trial.)

During the trial of the instant case, the defendant objected to the admission of testimony of Dr. Engles and the Court sustained the objection. However, later the same day, the trial judge ruled that Dr. Engles could be called as a witness for the State. On

page 250 of the casemade the following is found:

"THE COURT: Let the record show that since Doctor Engles first appeared as a witness early this afternoon an objection was made by Mr. Braly for him testifying as a witness on the grounds that his name did not appear on the Information or on the list of witnesses furnished the defendant, and the Court sustained his objection. Since that period of time it has come to the attention of the Court that when this case was first set down for trial, during the month of October, 1962, the defendant had been, at that time, furnished a list of witnesses in which is contained the name of Dr. Bob Engles. And the County Attorney has advised the Court that the name of Dr. Bob Engles was inadvertently omitted from the list furnished the defendant during this jury term. At this time, in the presence of the County Attorney, and Mr. Braly, the Court is now advising Mr. Braly that Mr. Gates, the County Attorney, will be allowed to call Dr. Bob Engles as a witness in chief, and that the hour is 5:40 and Mr. Braly has been advised that the Court will now recess until in the morning at 9:00 o'clock, at which time he can have the opportunity to talk with the witness, Dr. Engles, before he appears on the witness stand; or that he will be given an opportunity to talk with him at the present time before he goes on the witness stand at this hour, in the amount of time that he feels necessary for the consultation with the witness. Now, Mr. Braly, what is your desire?

"MR. BRALY: Comes now the defendant and objects to any postponement for the reason that the Court has heretofore sustained our motion objecting to the appearance of this witness for the reason that his name did not appear on the list given to the defendant on the 28th day of November, 1962.

"THE COURT: The record further shows that a subpoena was issued in this case on November 20, 1962, to a number of witnesses including Dr. Bob Engles, and that the subpoena shows that Mallory Rice, Deputy Sheriff of Bryan County, received the subpoena on the 20th day of November, and served the same on Dr. Bob Engles, along with other witnesses, and that the subpoena was filed in the office of the Court Clerk of Bryan County, Oklahoma on November 28, 1962. Let the record further show that the defendant, Loyd Grant, was served on October 1, 1962, a list of the witnesses in which list Dr. Bob Engles name appears, and that the signature of Loyd Grant also appears as accepting service and acknowledging receipt of the names of witnesses to be endorsed upon the Information and used in chief by the State of Oklahoma in the trial of this case."

Whereupon Mr. Braly retires from the courtroom to consult with the witness, Dr. Bob Engles, while the Court remains on the Bench and the Jury in the box. After Mr. Braly returns to the courtroom the following proceedings are had:

"THE COURT: Mr. Braly you have been back in the chambers, have you not, consulting Dr. Bob Engles concerning his testimony?

"MR. BRALY: Yes, sir.

"THE COURT: And at this time do you desire to adjourn court and continue the case at 9:00 o'clock in the morning for the purpose of further consultation with the doctor concerning his testimony?

"MR. BRALY: I object to any continuance, and I object to the testimony of Dr. Engles for the reasons stated in my earlier motion.

"THE COURT: Very well.
(Examination of the witness is conducted)

"It is noted by the Court that counsel did not claim surprise when the

court permitted the County Attorney to endorse the name of the witness upon the Information nor did he ask for a continuance of the trial in order to enable him to meet the testimony of the witness. To the contrary, he objected to the Court's suggestion that such a continuance would be granted. Defendant merely saved his exception to the action of the Court in permitting the witness to testify; and even after being given permission to talk with the witness, he did not ask for a continuance or that he be given additional time to prepare his defense to meet any unexpected development injected into the case by this witnesses' testimony. In Paschall v. State 96 Okl.Cr., 198, 252 P.2d, 175, We held:

"The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the Information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness, if the trial of the case was continued. Where he fails to do this the error, if any, is waived."

■ In our opinion, and in view of the circumstances outlined above, defendant's contention that he was not served a list of witnesses at least two days before his case was called for trial as is mandatory in capital cases in accordance with Art. 2, Section 20 of the State Constitution, is without merit. By his own actions, in objecting to a continuance, defendant waived his right to raise this question on appeal particularly in view of the fact that the testimony of Dr. Engles cannot be construed as funda-

mentally prejudicial to the defendant since the said testimony was limited to his opinion that pellets from a shotgun blast were the cause of death—an allegation which the defendant did not deny throughout the trial.

■ Moreover, the evidence affirmatively shows that the witness' name had been served on defendant fully two months before the case was tried, and we feel this amply satisfies the constitutional provision above referred to.

■ We find defendant's other contentions urged on appeal to be without merit. Many are assertions of happenings outside the record and this Court has ruled that we cannot consider events or occurrences which are not incorporated or preserved in the record. See, McGowan v. State, Okl.Cr., 380 P.2d 274.

■ The evidence, in our opinion, amply supports the verdict of the Jury, and having found nothing in the record which would prejudice the defendant, in his substantial rights, we are of the opinion that the judgment and sentence should be, and the same is hereby Affirmed.

NIX and JOHNSON, JJ., concur.