(No. 21167

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL GIACOMINO *et al.* Plaintiffs in Error.

*Opinion filed February 19, 1932—Rehearing denied April 6, 1932.*

524

 

DANIEL L. MADDEN, (JOHN E. TOOMEY, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Michael Giacomino and Frank LaPresto were jointly indicted at the February, 1931, term of the criminal court of Cook county. The indictment contained two counts. The first charged robbery with a pistol, and the second charged robbery without alleging that the defendants were armed with any dangerous weapons. A trial by jury was waived. The cause was heard by the court and both defendants were found "guilty of robbery in manner and form as charged." Giacomino was found to be twenty-two years of age and LaPresto eighteen years of age. After overruling a motion for a new trial the defendants were adjudged "guilty of said crime of robbery in manner and form as charged in the indictment," and Giacomino was sentenced to the penitentiary for an indeterminate term of years, not less than one or for life. LaPresto was sentenced to the State reformatory for a like term.

Section 246 of division 1 of the Criminal Code provides that "every person guilty of robbery shall be imprisoned in the penitentiary not less than one year nor more than twenty years; or if he is armed with a dangerous weapon, or if he has any confederate present so armed,

to aid or abet him, he shall be imprisoned in the penitentiary for any term of years not less than one year or for life."

It is contended that inasmuch as the defendants were not found or adjudged guilty, in express language, of robbery while armed with a dangerous weapon, it was error to impose sentence for the greater of the two offenses charged. It is claimed that where the punishment is not the same for the crimes charged in different counts of an indictment and there is a general verdict or finding of guilty no sentence can be imposed for the greater of the two offenses, but the only sentence, if any, must be upon the count charging the lesser offense. *McKevitt* v. *People,* 208 Ill. 460, is cited as authority for this contention. The prosecution in that case was based upon a statute then in force which provided a penalty for robbery when the accused was armed with a revolver, with "the intent, if resisted, to kill and maim." The indictment contained only one count, and the court held that it could not be said that a verdict merely finding the defendant guilty in manner and form as charged in the indictment was meant to include a finding that he intended to kill and maim, if resisted. It was further held that the accused could not be punished for the more aggravated form of the crime, under that statute, unless it appeared from the verdict that he had been expressly found guilty of such an intent. The statute under which McKevitt was prosecuted was later amended by striking out the provision relating to intent, so that the aggravated offense is now complete without any allegation or proof of intent to kill or maim.

The question here involved is whether or not, under a general finding, the defendants may be imprisoned for the graver offense. Wharton, in his work on Criminal Pleading and Practice, (8th ed.) sec. 737, states the rule as follows: "When counts are joined for offenses which are different but not positively repugnant and there is a general verdict of guilty, the practice is to sentence on the

count of the highest grade, the prosecution either expressly or tacitly withdrawing the other counts." In *People* v. *Stowers,* 254 Ill. 588, the defendants were found "guilty as charged in the second and third counts of the indictment." The second count charged the crime of rape and the third count charged an assault with intent to commit rape. The defendants were sentenced under the second count for the completed offense, and this court in affirming the judgment said that the trial court had, in effect, disregarded the finding of guilty on the third count and had sentenced the defendants upon the finding on the second count, which was within its power.

The victim of the robbery in this case was Ralph E. Anderson, a druggist in the employ of the Rosenblum Company. About 11:25 o'clock P. M., October 19, 1930, two men came into the drug store and after holding a brief conversation with Anderson produced pistols and compelled him to go to the rear of the store. The robbers took about $98 from the cash register, $20 from the cash box and $176 from another place. When they entered the store their coat collars were turned up and their hats were drawn down over their foreheads. Anderson testified that before they left he got a good look at their faces. He saw Giacomino about five days later at the Bridewell Hospital and identified him as one of the robbers. He also saw and identified LaPresto at the Cragin police station the day of the latter's arrest, November 7, 1930. LaPresto testified Anderson at that time expressed himself as unable to identify him. On the trial Anderson was positive about his identification.

The defendants testified in their own behalf and denied all participation in the crime. Each sought to establish an alibi. Giacomino, claimed that on the day of the robbery he went to the home of Mr. and Mrs. DelGenio about 5:00 o'clock in the afternoon, and that Mrs. DelGenio, Josephine Bruno and Rose Bruno were there when he ar-

rived. DelGenio came about thirty minutes later. He further testified that he stayed for supper, and about 8:30 or 8:45 he, Mr. and Mrs. DelGenio, a Mr. Grassidino and Josephine Bruno went to see a motion picture entitled "Sweethearts on Parade," at the Famous Theater. They left the show a little after 11:00 o'clock and returned to the DelGenio home, where he stayed until almost 1:00 o'clock. He said he did not see LaPresto that night and was not in company with him. He denied that Anderson identified him at the Bridewell Hospital.

Mrs. DelGenio and Josephine Bruno were witnesses in behalf of Giacomino. DelGenio and Grassidino were not called as witnesses. The testimony of Mrs. DelGenio and Miss Bruno concerning Giacomino's whereabouts in the afternoon and evening of October 19, 1930, was much the same as his. There was some deviation as to the time of his arrival, but we regard it as immaterial. These women testified that they did not know anything about Giacomino's arrest until a few days before the trial, when Mrs. Del-Genio's mother-in-law received a letter from Giacomino apprising her of the fact, and that they then remembered having been to the picture show with him on the night of the robbery. They testified they had not talked about the matter previously and had never heard of the robbery before.

The other defendant, LaPresto, also relied on an alibi. He testified that at the time of the robbery he was at a picture show at the Paradise Theater with his friends, Lodestro, Palumbo, Talaber, and his brother, Peter La-Presto, all of whom testified in his behalf. The Paradise Theater is a considerable distance from the Famous Theater, where Giacomino claims he was. LaPresto and his witnesses testified that after leaving the theater about 11:00 o'clock they went to a store on the corner of Chicago and Hamlin avenues, where they bought some cigarettes and then went home. They stated that the title of the picture witnessed by them was "Moby Dick;" that they lived in

the same neighborhood with LaPresto; that they had known him a long while, and that until the day before they were called as witnesses they were not aware he was charged with crime and was in jail. LaPresto's brother testified: "I first learned yesterday that my brother was charged with this crime. I didn't know he was indicted with this crime until yesterday." No explanation whatever was offered to excuse his lack of knowledge.

The trial judge in summing up the evidence stated he believed all of the alibi witnesses had deliberately falsified their testimony and were perjurers. It appears to us that their testimony in some respects is incredible. It is certainly remarkable that witnesses who were neighbors and intimate friends of the defendants had no knowledge of their arrest and confinement in jail until about a day before they were called upon to testify. Their story with respect to their recollections of the shows they attended and the detailed descriptions they gave are sufficient to arouse suspicion as to the veracity of the witnesses. They admitted having gone to other shows at about the same time but could neither remember the dates, the titles nor the principals. The trial judge saw and heard the witnesses and was in a better position to determine the weight and credit to be given to their testimony than is this court, and we are therefore not inclined to disagree with his findings.

One of the chief complaints urged is against the conduct and methods of the trial judge. It is charged that as to the defendants' alibi witnesses he was the chief examiner and propounded more questions' than did counsel for the People or counsel for the defendants, and in some instances more than both of them combined. Counsel for defendants claim that the judge displayed hostility toward the witnesses, subjected them to severe cross-examination, plainly indicated he did not credit their testimony and was determined to bring out evidence to convict defendants. Where a cause is tried before a jury the trial judge must

not indulge in extensive questioning or indicate by his conduct either favor or disfavor towards parties or witnesses. In *People* v. *Bernstein,* 250 Ill. 63, this court said that the examination of witnesses is the more appropriate function of counsel, and that instances are rare and conditions are exceptional which will justify the presiding judge in conducting an extensive examination. The *Bernstein case* was tried before a jury while a jury was waived in this cause. Neverthless, the principle enunciated in the former case is not to be ignored even when a jury has been waived. In either event it is the duty of the judge to arrive at his conclusions from a calm, unbiased consideration of the facts. He should neither be prosecutor nor defender. While he is a searcher for the truth it is not his duty to discomfit and confuse witnesses by his questions or attitude. The extent to which a judge may indulge in the examination of witnesses largely rests in his discretion, but in the exercise of such discretion he must not forget the function of a judge and assume that of an advocate. While the examination of witnesses by the presiding judge was unusually lengthy there was some justification for it. That the alibi witnesses were not telling the truth was evident. It is unbelievable that a brother of one of the parties did not know until the day before the trial that the defendants were charged with crime and had been in jail for several months. The whole story was obviously fabricated. The strictures and critical expressions relative to the untruth of the testimony of the alibi witnesses were made by the judge in summing up the case after the evidence was concluded. At such a time he had a clear right to express the views he did.

Our examination of the record leads us to the conclusion that the defendants were justly convicted, and therefore the judgment is affirmed.

*Judgment affirmed.*