(No. 35019.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILSON GREEN, Plaintiff in Error.

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

NORBERT E. ANDERSON, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY and JOHN T. GALLAGHER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Upon trial before the criminal court of Cook County, the defendant, Wilson Green, was found guilty of the crime of armed robbery and sentenced to the penitentiary for a term of not less than 15 nor more than 30 years. By writ of error he seeks to reverse the judgment of the trial court and assigns errors in that the evidence did not establish his guilt beyond a reasonable doubt, the court did not grant a mistrial after evidence of other crimes had been presented, and the court erred in unduly examining the defendant's alibi witness.

The evidence for the People established that on June 11, 1957, at about 2:15 P.M., a robber, armed with a short

black revolver, held up the employees of the Cosmo Currency Exchange located at 3616 West Sixteenth Street in the city of Chicago. The robber gained entrance to the teller's locked cage by accosting one of the women employees as she was about to enter the enclosure on her return from lunch. After forcing entry, he held three employees at gun point while removing approximately $3,000 from the cash drawers and safes. He then locked them in the washroom and escaped.

Police officers, who were called to the scene after the employees had been released, made an investigation of the premises and obtained a description of the robber from the victims. He was described as being a dark-skinned negro who wore a brown coat, dark pants and a gray "ivy league" cap which had a plaid band across the back. The officers were told that the robber appeared to have something wrong with his left arm which he moved in a peculiar manner as he took the money from the drawers; and that he had no mustache.

On the date of the robbery, the victims went to the detective bureau, where, after viewing a large number of photographs, they selected one of the defendant as the man who had robbed them. On June 19, 1957, after defendant's arrest, the police conducted a "line-up" at which all witnesses to the robbery were present and they pointed out the defendant, in a line of six persons, as the man who had committed the robbery.

At the trial defendant was positively identified by all three victims of the robbery, who related in detail the occurrences at the time of the commission of the crime as well as the events leading to his identification. The manager of the exchange and two police officers also testified that after the "line-up," defendant, in their presence, admitted that he committed the robbery. In rebuttal, one of the officers testified that defendant, in admitting his guilt, verbally re-enacted the crime.

All witnesses for the People were subjected to extensive cross-examination concerning the circumstances surrounding the identification of defendant, particularly with reference to the statements as to the apparent condition of the robber's arm and whether he wore a mustache. This testimony indicates that the witnesses did not positively state that the robber had a deformed arm, as defendant now contends, but rather that he moved his arm in such manner as to give the appearance of disability. One witness stated that the left coat sleeve appeared to be too long, and that the robber moved his arm peculiarly in an apparent effort to keep the sleeve from falling down over the knuckles of his hand.

Defendant denied committing the robbery and sought to interpose an alibi. He stated that on the date in question he went to the home of Leola Hudson at about 1:00 P.M. and stayed there "a couple of hours or longer." He further testified that when he was arrested in his room on Division Street, he had narcotics there; and that he was charged with possession of narcotics, but the case was later dropped. When questioned by his counsel concerning the source of the money found in his pocket at the time of his arrest he said: "Well, I had some narcotics up there, a large amount of it." He admitted telling the officers and manager of the exchange that he had committed the robbery, but stated he did so only after one of the officers told him that if he didn't confess he would be taken over "to D-2 to see a certain Lieutenant Pape, or something" who would make him tell his life history. The officer to whom these remarks were attributed denied making such statements when testifying in rebuttal.

Leola Hudson, an unmarried girl, age 15, who, after giving birth to a child at a local hospital, had returned home June 10, testified that the defendant came to her home at about 12:45 P.M. on June 11, the day of the crime, and remained there until 2:30 P.M. She stated on

cross-examination that she met the defendant at a restaurant on Division Street and had seen him from time to time, but that she had seen him only once in June which was on the date of the alleged offense. Further examination by the trial judge elicited that defendant had visited in her home on only two occasions and that he had never been there after June 11.

Proofs were closed with a stipulation that defendant had a prior record of conviction for armed robbery for which he had been sentenced to the penitentiary in June, 1952. After the arguments of counsel, the judge indicated that he would find the defendant guilty and asked for recommendations relative to sentence.

While court and counsel were discussing this matter, the bailiff announced that the "young lady would like to tell the truth." Leola Hudson then told the court that defendant had been at her home on June 11, but that he had stayed there only until about 1:30; that A. C. Young had told her to testify that defendant had been there until 2:30; and that Young was supposed to be a witness in the case. After hearing this statement, the court indicated possible contempt proceedings against Leola Hudson and A. C. Young, and announced that the defendant's sentence would be 15 to 30 years.

The defendant then asked permission to address the court. After being admonished to tell the truth, defendant said: "Well, I will tell the truth, your Honor. You see, I committed the crime." Defendant then made a lengthy statement to the court in which he recited that he had "stuck the place up"; that he had received one half of the money taken which amounted to about $2,800; that he had made a similar statement to the police; but that the witnesses against him had lied in that his arm was not deformed and his coat was not too large. After hearing defendant's statements, the court indicated that the sentence, as previously announced, would stand. The errors urged on this appeal

must be considered in the light of defendant's confession made in open court.

We find no prejudicial error in the trial court's examination of the witness Leola Hudson. Though such examination rests largely in the discretion of the trial judge, it should rarely be extensive and should always be conducted in a fair and impartial manner. (*People* v. *Marino,* 414 Ill. 445; *People* v. *Bernstein,* 250 Ill. 63.) In examining a witness the court should never depart from his proper function as judge and assume the role of an advocate, (*People* v. *Trefonas,* 9 Ill.2d 92; *People* v. *Giacomino,* 347 Ill. 523,) but the court does have the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure. (*People* v. *Marino,* 414 Ill. 445, 450.) The propriety of judicial examination is to be determined by the circumstances of each case and the trial judge, as a seeker for truth, may be entirely justified in making pertinent inquiries. (*People* v. *Trefonas,* 9 Ill.2d 92.) Even a rather lengthy examination of alibi witnesses may be proper where it is evident they are not telling the truth. *People* v. *Giacomino,* 347 Ill. 523.

The trial court's examination of Leola Hudson was not lengthy. The questions asked neither indicated bias or prejudice, nor an assumption by the court of the role of advocate in the case. The testimony of the witness as to her prior acquaintance with the defendant was vague and suggested that she might not be telling the truth concerning the defendant's alleged visit on June 11. By his inquiries the trial court sought to ascertain how many times defendant had been in the home of the witness during their acquaintance, which could have had a bearing on the likelihood of the defendant having been there at the time of the crime.

Defendant also contends that the trial court erred in refusing to grant a mistrial after evidence concerning the commission of other crimes unrelated to the offense charged

had been introduced, and that the evidence did not establish his guilt of the crime charged beyond a reasonable doubt because of alleged uncertainties in his identification by the victims of the robbery. In answer to these contentions, the People urge that neither a volunteered statement of a witness that defendant had a prior conviction for robbery which was ordered stricken, nor cross-examination of the defendant concerning the source of the money found on him, deprived the defendant of a fair trial, since his prior record of conviction was admitted by stipulation, and the defendant by his direct examination inferred that the source of the money found on his person was from the sale of narcotics. However, under our theory of the case, we need not resolve these contentions.

We believe that the assignments of error are without vitality by virtue of defendant's voluntary confession of guilt in open court. After the court announced the sentence, defendant asked that he be allowed to address the court and was granted permission to do so upon condition that he tell the truth. The defendant then not only related facts concerning the robbery and the disposition of the money, as heretofore related, but he also unqualifiedly acknowledged his guilt.

· A confession is a voluntary acknowledgment of guilt after the perpetration of an offense or of facts which directly and necessarily imply guilt. (*People* v. *Stanton*, 16 Ill.2d 459; *People* v. *Sleezer*, 9 Ill.2d 57; *People* v. *Arthur*, 314 Ill. 296.) A voluntary confession by a competent person is of convincing character and the highest type of evidence known to law. *People* v. *Hall*, 413 Ill. 615; *People* v. *Thomlison*, 400 Ill. 555.

Confessions may be classified as judicial and extrajudicial. A judicial confession consists of a plea of guilty to an indictment or some similar action or conduct in a court or judicial proceeding. (*People* v. *Manske*, 399 Ill. 176; *Harper* v. *State*, (Tex. Crim. App. 1945,) 187 S.W.2d

570, 571; *Botello* v. *State,* 145 Tex. Crim. App. 50, 165 S.W.2d 903, 904.) The testimony of an accused at the trial may constitute a judicial confession, (*Botello* v. *State,*) or such confession may consist of a statement before a magistrate on preliminary examination. (*Skaggs* v. *State,* 88 Ark. 62, 113 S.W. 346.) An extrajudicial confession is one made other than in court or before a magistrate. 20 Am. Jur., p. 418, par. 479.

A judicial confession, voluntarily made, is binding upon the accused, and this is true whether the confession takes the form of a plea of guilty or is found in other statements made in court in the course of legal proceedings. (*People* v. *Baxton,* 10 Ill.2d 295; *Harper* v. *State,* (Tex. Crim. App. 1945) 187 S.W.2d 570.) A defendant may, by plea of guilty or confession, waive the production of all evidence of his guilt. (*People* v. *Baxton,* 10 Ill.2d 295, 299; *People* v. *Trefonas,* 9 Ill.2d 92, 98, 99; *People* v. *Schultz-Knighten,* 277 Ill. 238, 240.) Thereafter, he may not question the legal sufficiency of the evidence against him. *People* v. *Trefonas,* 9 Ill.2d 92.

It is our conclusion that defendant's statement made in open court constituted a judicial confession by which he is bound. It matters not that he was no longer testifying as a witness in his own behalf or that his statement was made after the court had indicated the sentence. The statement was voluntary and made under circumstances guaranteeing its reliability. The defendant confessed in open court that he committed the crime charged. Such confession adequately proved his guilt and, under the circumstances of this case, we need not pass upon the errors assigned which challenge the sufficiency of the evidence to support the verdict and judgment.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*