### SKAGGS *v.* STATE.

### Opinion delivered October 19, 1908.

1.   CRIMINAL LAW—ABSENCE OF JUDGE DURING TRIAL.—The bill of exceptions in a felony case shows that while defendant's counsel was making his argument to the jury the judge stepped across the hall from the court room to a closet, and was absent from the court room for the space of about two minutes, and while out of the court room an attorney sat in the judge's chair at the request of the judge. *Held* that the record fails to show that the judge was out of hearing and lost control of the case.   (Page 68.)

2.   TRIAL—INSTRUCTION—WEIGHT OF EVIDENCE.—An instruction that if the jury find that defendant confessed his guilt, and that the crime was committed, they should convict, was not objectionable as being on the weight of evidence.   (Page 70.)

3.   JUDICIAL CONFESSIONS—CORROBORATION.—Confessions made by the accused in preliminary examinations before magistrates are judicial confessions, within the rule which holds such confessions to be sufficient without corroboration to sustain a conviction.   (Page 71.)

4.   TRIAL—IMPROPER ARGUMENT.—A conviction of assault with intent to commit rape will not be reversed on account of improper argument of the prosecuting attorney which might have influenced the jury to convict if the defendant confessed in the examining court that he was guilty of rape.   (Page 72.)

5.   SAME—IMPROPER ARGUMENT.—A conviction of a felony will not be reversed because the prosecuting attorney in his opening statement

said that defendant was a "man of lowest character, and unworthy of belief; a gambler of the meanest type, preaching in the daytime and gambling at night," where the trial court was not asked to do anything more than sustain an objection to the statement, which was done. (Page 72.)

6. SAME—EXCLUSION OF TESTIMONY.—Where the defendant in a felony case testified in his own behalf, he cannot complain on appeal because the State offered to prove that he was a man of bad character, a gambler of the worst type and unworthy of belief, if the court on his objection excluded the proffered testimony. (Page 73.)

7. RAPE—EVIDENCE—COMPLAINT MADE BY PROSECUTRIX.—In a prosecution for rape the fact that the prosecutrix made complaint is admissible under certain circumstances, but the details of the complaint are not admissible unless they constitute a part of *res gestae*, or corroborate her testimony when attacked. (Page 73.)

8. SAME—EVIDENCE—CORROBORATION OF PROSECUTRIX.—In a prosecution for rape, the physical appearance of the prosecutrix, the condition of her garments, and sometimes the condition of the place where the crime is alleged to have been committed, are admissible in corroboration of her testimony. (Page 74.)

9. CRIMINAL LAW—PRESENCE OF TRIAL JUDGE.—The presiding judge in a criminal trial is not required to sit in one place in the court room; and, so long as he is in the presence of the parties and the jury and in control of the proceedings, the integrity of the trial is not affected by a change in his seat. (Page 74.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

## STATEMENT BY THE COURT.

Elijah Skaggs, Mrs. Margaret Irene Taylor, her brother, Mr. Todd and a Mr. Allen came to Fort Smith in May, 1908, from Dallas, Texas, in and about which place these parties had resided for a number of years. When they reached Fort Smith, they went to a hotel and had dinner together. After they came out of the hotel, the suggestion was made that they see the town, and she proposed going to the park. Her brother proposed that he and Mr. Allen go together, and that she and Skaggs go together. This was agreed to. Her brother and Mr. Allen went somewhere else, and she and Skaggs got on a car and went to the park, some distance from the city. They walked around the park for some time, and then crawled out of

the rear fence and went some little distance into the woods. What occurred there will be referred to later.

She and Skaggs returned from the park on the same car, but not sitting together; and immediately upon arrival in the city she went to the mayor's office and seemed rather excited. The city clerk told her the mayor was out, and asked her if there was anything she wanted, and she remarked that a rape had been committed. He told her that the mayor had nothing to do with it, and sent her to Sam Edmondson, a justice of the peace, to whom she then went and made complaint. He went out with her and Mr. Todd, her brother, and two officers. They went to the back end of the park and saw the tracks where a man and woman had walked, and the imprint of the heels of the woman's shoes were similar to those worn by Mrs. Taylor. They found the place where these tracks led to, and it was trampled down and the appearance of the ground indicated that persons had been scuffling there. Mrs. Taylor exhibited a torn undergarment.

Skaggs was arrested, and had a preliminary trial before said magistrate. His conduct in said court was thus afterwards described by the justice of the peace (and Skaggs did not deny it):

"Q. I will ask you if you arraigned the defendant and advised him of the crime with which he was charged?

"A. I did.

"Q. What was his answer?

"A. His answer was that he was guilty of rape, and he was guilty of murder, and I remarked to him if he wanted an attorney, and he said he did not; that he wanted to suffer the penalty of the law for what he had done; and I said to him that that was a very grave matter; that if he entered a plea of guilty in the case the penalty was hanging, and I said, 'My friend, don't you want a lawyer?' and he said 'No, I am not only guilty of rape, but I am guilty of murder,' and I said I did not know of anybody being killed, how could you be guilty of murder, and he said, 'I am guilty of the crime for which I am accused; I am guilty of murder, because I have taken that woman's honor', and pointed to Mrs. Taylor."

Mrs. Taylor testified in said examining court that when they reached the place where the scuffle was indicated he had

grabbed her, and she fought him, but he was strong, and overcame her, and ravished her, tearing her undergarment in order to accomplish his purpose; and that she immediately came back made complaint as stated. She repeated this same testimony before the grand jury, and Skaggs was indicted for rape. While he was in jail, she visited him four times. There was testimony that the first time she visited him he offered her $500 to withdraw her charge, and she became very angry thereat, but later held long private conversations with him.

Skaggs was put on trial, and the State introduced Mrs. Taylor as the first witness. She testified that she had known Skaggs for four years, during which time he was preaching the gospel; that she believed him to be the King of Kings and Lord of Lords, and Elijah the Prophet; and that she was a disciple of his; that before they came to Fort Smith they made a covenant; the King was to restore all things, and she was willing to be a sacrifice to him; that they went to the park, to have the appearance of having committed an offense which he did not commit, so that he would be hung, in order that all men might have glory and peace and honor.

In his testimony he was more explicit as to his covenant. He says that he and Mrs. Taylor agreed that he should die and rise on the third day; that he should die by hanging; that he knows he is King of Kings and Lord of Lords; that he is Elijah, King of the Gentiles, the same as Christ was King of the Jews; that he wanted to be hung, and on the third day rise and redeem the world; that he did not want to murder any one, and in order to accomplish the purpose it was agreed that a rape should be simulated.

Mrs. Taylor testified that Skaggs did not ravish her physically, that the rape was a spiritual one. She admitted that her former testimony before the justice of the peace and before the grand jury made out a charge of rape against him; but said that the wrong interpretation had been placed upon it; that she meant a spiritual, and not a carnal, rape. She says she tore the garment herself, and that he had not touched her.

The State proved her former testimony, which she admitted; proved the appearance of a scuffle and the torn garment, and her excited and almost hysterical manner immediately after the oc-

currence; and also proved that in the trial before the justice of the peace Skaggs in open court confessed that he had raped her, and said that he wanted to be hung therefor.

Other testimony was adduced, showing admissions which he had made and which tended to prove that his conduct was actuated by a carnal, and not a spiritual, mind, and that he had accomplished a physical rape. In his testimony he admitted practically all of the testimony adduced by the State, but claimed that he had committed this spiritual rape for the purpose of being hung and rising on the third day and redeeming the world. He said that he had consulted a lawyer before he went to the park (and this was also proved by the lawyer), to ascertain the punishment for the crime of rape in this State. He averred his readiness to be hung then, but said that he had been told by his best friends that the jury would not hang him, and that if he pleaded guilty they would send him to the penitentiary, and he did not want to go to the penitentiary; that he would rather be hung than go to the penitentiary.

The defendant introduced the testimony of a deputy constable, who said he saw Mrs. Taylor and Skaggs at the park. He said he saw them turn towards the south side of the park, and they stayed about thirty minutes or a little longer; that he does not think they were out of his sight more than two minutes. The defendant did not touch her while in his sight. He was within about thirty or forty feet of them when they were south of the park. He did not go out where they claimed they were. He says that he did not stop at the place where the scuffle was alleged by her to have occurred. He says that she was using profane language and cursing Skaggs. Mrs. Taylor was recalled and denied that she saw this officer, and denied using the language which he attributed to her. This was substantially all the testimony in the case. The jury convicted him of assault with intent to rape, and assessed his punishment at twenty-one years in the penitentiary. Skaggs has appealed, and the Attorney General confesses error, and the prosecuting attorney of the 12th circuit files a brief, insisting that there was no error.

*Rowe & Rowe,* for appellant.

*Wm. F. Kirby,* Attorney General and *Dan'l. Taylor,* assistant, for appellee.

Error is confessed because:

1. The trial judge, during the progress of the trial and while defendant's counsel was making his argument to the jury, left the court room, absenting himself therefrom about two minutes. This is reversible error. 77 Ark. 112.

2. A trial judge is prohibited from instructing with regard to matters of fact, or from telling the jury what would be sufficient to convict, or what facts would warrant a verdict of guilty. The fourth instruction is erroneous. 83 Ark. 192; 85 Ark. 138.

3. The bitter denunciations of appellant by the prosecuting attorney in his opening statement to the jury were of such character that the prejudicial effect thereof could not be eradicated by merely sustaining the objections of defendant's counsel to such remarks. Confession of error would not be based on this alone, had the State's attorney not, at the conclusion of the evidence, although appellant had not put his character in issue, demanded in the hearing of the jury that he be allowed to introduce evidence to show that appellant was a man of bad character, a gambler of the worst type and unworthy of belief. 66 Ark. 16; 33 Barb. 229; 35 Mich. 371; 71 Ark. 415; *Id.* 427; 58 Ark. 368; 63 Ark. 176; 72 Ark. 461.

4. The evidence is weak and unreliable—not a *scintilla* of testimony to show an assault with intent to rape. All of the incriminating evidence shows conclusively that the crime, if any was in fact committed, was that of rape. Appellant was either guilty of the crime of rape, or of no crime at all.

*A. A. McDonald,* prosecuting attorney 12th circuit, for appellee, resisting confession of error.

1. The fourth instruction is a correct statement of the law, and is applicable. It does not fall in the class with the instructions criticised in the cases cited by the Attorney General. This instruction leaves it to the jury *to find from the evidence* whether or not a confession was made, whether or not proof was made that the offense was committed, then if, from the evidence they found, beyond a reasonable doubt, that the confession was made, and that the crime was committed, they were authorized to convict. The entire instruction is hypothetical, assumes no facts,

leaves everything to the jury to find from the evidence and beyond a reasonable doubt.

2. The fact that, during the progress of the argument of defendant's attorney, the judge stepped across the hall from the court room to the water closet, is no ground for reversal. *Stokes* v. *State,* 71 Ark. 112, does not apply. Reversible error occurred during the absence of the judge in that case, where in this not only was there no exception taken to the absence of the judge, but the attorney for appellant was arguing to the jury in his behalf and was practically in charge. The action of the judge in absenting himself from the immediate presence of the jury was rather in appellant's favor than otherwise, and he has no ground of complaint.

3. If, as seems to be conceded by the Attorney General, the opening statement of the prosecuting attorney and his offer to prove the bad character of the defendant must be taken together to constitute error, then I contend there was no error. The trial court sustained objections both to the alleged improper remarks and to the offer to introduce this testimony. Indeed, the court ought to have admitted this testimony because appellant had put his character in issue in the most positive manner possible in parading himself before the jury as a man of God, a preacher for 13 years as belonging to the Church of the First Born, as King of Kings and Lord of Lords, etc.

4. As to the evidence being unreliable and weak, etc., and the argument that the defendant was guilty of rape or nothing, it is sufficient to say that that was for the jury to determine under the evidence and the instructions of the court. The crime of assault with intent to commit rape is included in the crime of rape, and the jury had the right to say from all the evidence and circumstances whether appellant was guilty of the higher or lesser degree of crime.

HILL, C. J., (after stating the facts). 1. The first point upon which the Attorney General confesses error is the absence from the court room of the presiding judge. The record on this point reads as follows: "While defendant's counsel was making his argument to the jury, the judge stepped across the hall from the court room to the water closet, and was absent from the court room for the space of about two minutes, and

while out of the court room T. S. Osborne, a regular practicing attorney of the bar, sat in the judge's chair at the request of the judge. No objection was made to this, and no exception taken to it during the trial."

The authorities are not entirely harmonious as to the effect of the absence of a judge from the bench during the progress of a trial. The subject may be found reviewed in *Horne* v. *Rodgers*, 110 Ga. 362, s. c. 49 L. R. A. 176; *Ellerbee* v. *State*, 75 Miss. 522, s. c. 41 L. R. A. 569. This court had the subject before it in *Stokes* v. *State*, 71 Ark. 112, and the court followed the language of Judge Chalmers in *Turbeville* v. *State*, 56 Miss. 793, a leading case on the subject. The Turbeville decision is applicable here, as shown by the following excerpts: "During the arguments of counsel to the jury, the judge left the bench and stepped into a room immediately adjoining and in the rear of the bench, and separated from it only by the thickness of the wall, through which a door opened. He placed a member of the bar on the bench, with instructions to call or notify him if needed. He remained in this room, thus absent from the bench, and distant from it, as the bill of exceptions shows, five or six feet, during the greater portion of the time consumed in the several addresses of counsel to the jury. It does not appear whether the door which opened from the bench, or rostrum, into this room (styled the judge's retiring room) was closed or open while the judge was thus absent. * * * If we could consider this statement of the facts as showing such absence from the room on the part of the judge as constituted even a temporary relinquishment of the control of the court and of the conduct of the trial, we should unhesitatingly reverse the judgment. There can be no court without a judge, and his presence, as the presiding genius of the trial, is as essential during the argument as at any other time. We do not mean to say that he must actually listen to every word that falls from the lips of counsel while they are addressing the jury, for this might impose a burden too heavy to be borne, but we do mean that the conduct and control of the argument within legitimate limits is confined to him as a judicial duty, and cannot be by him devolved upon another. While he will not be precluded from changing his seat to any portion of the room he may prefer, or from tem-

porarily engaging in conversation, or reading or writing, he must remain within the hearing of counsel, so as to be able instantly to assert his authority, if demanded by anything that may occur. While it will rarely be necessary or proper for him to interfere with counsel, instances may arise that will require it; and, moreover, the conduct of the jurors, spectators, or officers of court may be such as to demand the instant interposition of his authority. * * * The bill of exceptions in this case fails to show clearly that there was any relinquishment by the judge of the functions of his office, or any such bodily absence as prevented their instant assertion when demanded; and we decline, on this account, to reverse the judgment."

It is thus seen that the determining test is whether the judge has lost control of the proceedings. If he has done so, even if it be but for a short time, the integrity of the trial is destroyed. Applying that principle here, the record fails to show that the judge was out of hearing of the proceedings of the court when he stepped across the hall to a closet for a brief space of time. It does not disclose the distance from the court room to the closet, or whether the doors were opened or closed, or whether the proceedings could or could not be heard by him. The matter then before the court was the address of the defendant's counsel to the jury. The trial having taken place in June, and the doors between court rooms and halls at that time of the year being usually left open, it may well be inferred that the judge was within the hearing of the proceedings of the trial and within the reach of it so that he could instantly have asserted his authority. On the other hand, it may have been that the doors were closed, or that the closet was in such a position that he was withdrawn entirely from hearing the proceedings, and was unable to instantly control them—in which event it would vitiate the trial. The burden is on the appellant to show affirmatively that the judge had lost control of the trial; and this record fails to show that, leaving it, at best, a matter of conjecture as to whether or not he had removed himself for a brief period of time from the immediate presence of the proceedings where he could not exercise his legitimate functions as presiding judge of the court.

II.  The next confession of error is for the giving of the

fourth instruction, which is as follows: "If you find from the evidence that the defendant made a confession that he had committed the crime of rape on the person of Margaret Irene Taylor, that alone would not be sufficient to authorize you to convict; but the confession of defendant, if made, accompanied by proof that the offense was actually committed, will warrant a conviction; and if you find from the evidence beyond a reasonable doubt that defendant made the confession of the crime, and that the crime was committed, you should convict."

The Attorney General says that under *Duckworth* v. *State*, 83 Ark. 192, and *Thomas* v. *State,* 85 Ark. 138, this instruction is erroneous.

This is not an instruction on the weight of the evidence, and is not obnoxious to the objection for which the instructions were condemned in those cases. The court left it to the jury to say whether or not the appellant made a confession, and told them that, if they found that he did make a confession, such fact alone would not authorize them to convict, but that they must also find that the offense was committed, which was tantamount to saying that they could not convict the defendant because he made the confession, but that they must go further and find that his confession was true before they were authorized to convict. There was really no dispute in the evidence about the fact that the defendant had made a confession, and that it was a confession in open court. The instruction as a whole fairly submitted to the jury to find beyond a reasonable doubt whether the defendant made a confession, and whether the crime was committed; in other words, whether the confession was true.

While the form of the instruction cannot be commended, prejudicial error is not found in it. If specific objection had been made to it, its awkward form could and should have been corrected. The real question in the case was, not whether the confession was made, but whether the crime was committed; and the instructions on the only real issue were clear and sound. In one respect the instruction is more favorable to the defendant than he was entitled to. It is based on the theory that his confession in the examining court was an extrajudicial confession, and needed corroboration, pursuant to section 2385 of Kirby's Digest: "A confession of a defendant, unless made in open

court, will not warrant a conviction, unless accompanied with other proof that such offense was committed."

Confessions made in preliminary examinations before magistrates are confessions in open court, or, as they are usually expressed, "judicial confessions." 1 Greenleaf on Evidence, § 216; 12 Cyc. 459 and 473; 6 Am. & Eng. Enc. 523; 3 Enc. of Ev. 352; *Matthews* v. *State,* 55 Ala. 65; *State* v. *Needham,* 78 N. C. 474; *State* v. *Lamb,* 28 Mo. 218; *Speer* v. *State,* 4 Tex. Cr. App. 474; *Com.* v. *Brown,* 150 Mass. 330.

From these authorities it will be seen that a confession made in a preliminary hearing, when made in the due course of proceedings of the examining court, is a judicial confession within the meaning of the law, which holds such confessions alone to be sufficient to sustain a conviction.

III. The Attorney General confesses error on account of remarks of the prosecuting attorney. He does it upon the ground that the testimony, if it established anything, established rape, and not attempt to commit rape, and that the testimony to sustain the conviction is weak, and that the improper argument of the prosecuting attorney may furnish the key to the verdict returned by the jury. In view of the confession in court being of itself sufficient to sustain the conviction, the force of the argument is broken. This confession was of the graver, and not of the lesser, crime; and it is within the power of the jury to find a defendant guilty of an assault to commit a rape, although the evidence justified a conviction of rape. This was settled in *Pratt* v. *State,* 51 Ark. 167.

IV. The next confession of error is on account of the argument of the prosecuting attorney in his opening statement. He said that the defendant was a "man of lowest character, and unworthy of belief; a gambler of the meanest type, preaching in the daytime and gambling at night"—and using other denunciatory language. The defendant objected to said statement, and the court sustained the objection. The judge was not asked to do anything except to sustain the objection to the argument, which he did. Had the court been asked to reprimand counsel for stating a matter not proper to be stated in presenting the State's case, and called the attention of the jury to the fact that the character of the defendant was not at that time in

issue, and could not be unless he was called as a witness, and then only for the purpose of impeaching him as a witness, doubtless it would have been done; and, had the court failed to properly eradicate the improper remarks, there would then have been something before this court to consider. *Kansas City S. Ry. Co.* v. *Murphy,* 74 Ark. 256.

After the evidence was closed, the prosecuting attorney, in the presence of the jury, requested the court to permit the State to introduce evidence to show that the defendant was a man of bad character, a gambler of the worst type and unworthy of belief. The defendant objected to said statements and to the introduction of the evidence, and the court had the jury to retire from the court room, and afterwards heard argument on this point and sustained the objection of the defendant. As the defendant had then testified, testimony as to his reputation for morality and veracity would have been competent; and the court should have permitted the prosecuting attorney to introduce testimony on these subjects, but not as to the fact that he was a gambler. The ruling of the court was more favorable to the defendant than he was entitled to. There is nothing for this court to review upon it, other than the question whether the effort of the prosecuting attorney to make this proof was such flagrant conduct as would of itself prejudice the defendant's cause. It was a mere offer, doubtless in good faith, to prove what he was entitled to prove—and a little more. The defendant did not ask that the effect of it be removed, and only objected to the testimony being admitted, and the court sustained his objection. He got all he asked of the court, and cannot complain that the court did not do more for him than he asked of it.

These are the only grounds upon which error is confessed. Appellant has not favored the court with a brief, but was content to submit the case upon the confession of error. The court has examined the other assignments of error in the motion for new trial, which were, briefly stated, as follows:

Exception was taken to the evidence of witnesses to the effect that they accompanied the prosecuting witness to the park, and there found a man's and a woman's tracks leading to a place where the ground was trampled down in such condition that it gave the appearance of a scuffle having taken place. The fact

that the prosecutrix made complaint is admissible under certain circumstances; but the details of the complaint are not admissible unless they constitute a part of the *res gestae,* or in corroboration of her testimony when it is attacked. Her physical appearance, and the condition of her garments, and sometimes the condition of the place where the crime is alleged to have been committed, are admissible in corroboration. See *Pleasant* v. *State,* 15 Ark. 624, Enc. Ev. 587, 590 and notes. It is wholly unimportant to go into that subject, because the defendant himself testified to the fact that he and Mrs. Taylor walked around the park for a while, and that they decided they would go and fix a place, mash down some weeds and give the place the appearance of a scuffle having taken place, and then she would go back to town and have him arrested. In other words, they were manufacturing evidence tending to prove that the rape had been committed; and the question was not whether their tracks were at the given place, whether the weeds were mashed down and a garment torn, but it was whether there was a crime committed, or whether a mere stage-play had taken place.

The court, at the instance of the prosecuting attorney, ordered the prosecutrix to be arrested for perjury at the conclusion of her testimony, after she had admitted that she had testified in the justice's court to facts showing rape. No objection was made to this proceeding, no exception taken to the action of the court thereupon, and therefore there is nothing to review on this assignment of error.

Other language of the prosecuting attorney denunciatory of the defendant was assigned as error in the motion for new trial; but exception was not taken to it at the time it was made, nor were any rulings of the court asked upon it.

At another time during the trial the judge vacated the bench and asked an attorney to occupy his seat; but he did not retire from the court room, merely going to a window in the court room for fresh air for a time. As stated in the Tuberville case and the Stokes case, heretofore referred to, the judge is not required to sit in one place in the court room, but so long as he is there, in the presence of the parties and the jury and in control of the proceedings, the integrity of the trial is not affected by a change in his seat.

Exceptions were taken to the instructions. The instructions merely followed the statutes on the subject of the crime and a few general principles governing it. There is no error in them. The court gave all requested by the defendant but one, and it was manifestly incorrect.

Judgment affirmed.

McCULLOCH, J., (dissenting.) It will be readily seen from a perusal of the statement of facts in the opinion of the Chief Justice that the only direct evidence of crime is the repudiated statements of the accused man and the accusing woman. The circumstances adduced in evidence are at most only corroborative of these statements. The woman having in her testimony at the present trial denied the truth of her former statements and declared that no assault had been made upon her person, her testimony is without any probative force whatever. Her former statements can not be received as substantive evidence of the commission of a crime. The only purpose of admitting it is to discredit her present testimony by showing her former contradictory statement; and, since her present testimony tends to prove nothing, the former statement is valueless. 2 Wigmore on Ev., § 1136. Nor can her former statement be received in evidence as part of the *res gestae.* Her statement to the officers soon after she returned from the scene of the alleged crime is too remote, and is but a narrative of a past event and not a part of the transaction itself. *Baker* v. *State,* 85 Ark. 300.

The alleged incriminating circumstances prove nothing of themselves, for their relation to the commission of the offense depends entirely on the truth of the woman's former statements to the officers. The torn garment, the tracks and evidences of a struggle on the ground in the public park, without other evidence connecting them with the crime, have no tendency towards proving the crime of rape or assault with intent to rape.

This leaves nothing in the case except the repudiated confession of appellant himself. Appellant's offer, while in jail, to pay the woman money to withdraw the accusation adds nothing to the strength of the evidence, as it is but a tacit confession of guilt, and certainly amounts to no more than his direct confession.

The authorities cited in the opinion of the Chief Justice

seem to sustain the conclusions expressed therein that the confession of an accused person made to a justice of the peace in an examining trial is a judicial confession, and may be sufficient to sustain a conviction without other evidence of the commission of the alleged crime. I do not dissent from that conclusion. But, aside from the legal insufficiency of the evidence, it is far from convincing that any crime has been committed. The undisputed evidence of a previous plan between this man and woman to simulate the commission of the crime, their intimate and friendly association with each other, both immediately before and after the alleged crime, her frequent visits to and conferences with him in jail and her narrative on the witness stand of their weird scheme to simulate the commission of the crime so that he might expiate it on the gallows as a voluntary sacrifice of his life, convince me that no crime was in fact committed, but that the plan was born either of fanaticism or a vitiated taste for notoriety. I am so thoroughly convinced by the testimony that no crime was committed that I cannot consent for the conviction of the accused to stand.

The court gave, over appellant's objection, the following instruction, which is assigned as error:

"4. If you find from the evidence that the defendant made a confession that he had committed the crime of rape on the person of Margaret Irene Taylor, that alone would not be sufficient to authorize you to convict; but the confession of the defendant, if made, accompanied by proof that the offense was actually committed, will warrant a conviction; and if you find from the evidence, beyond a reasonable doubt, that the defendant made the confession of the crime, and that the crime was committed, you should convict."

The instruction is criticised on the ground that it invades the province of the jury in passing on the weight of the evidence. *Duckworth* v. *State,* 83 Ark. 192. The language of the instruction is ambiguous, and Mr. Justice HART and I are of the opinion that it was calculated to mislead the jury, when it is considered in the light of the very weak evidence in the case, even if the evidence should be held to be legally sufficient to sustain the verdict.

The other judges think that the concluding words of the in-

struction save it from condemnation because the jury are in effect told that they must, in order to convict, find beyond a reasonable doubt, in addition to the confession, that the crime was committed by the defendant. While it is possible to place this construction upon the form of expression employed, it is ambiguous to the average mind, and calculated to induce in the minds of the jury the idea that, if they believe that the defendant made a confession, it was their duty to convict him. It was therefore misleading and prejudicial.

It is proper for trial courts to instruct juries, in the language of the statute, that a confession not made in open court will not warrant a conviction unless accompanied with other proof that the offense was committed; but it is improper to give the converse of the proposition unless it be coupled with the further statement or qualification that the evidence as a whole must satisfy the jury beyond a reasonable doubt of the guilt of the accused. In that form it is not improper, but without the above qualification it is an instruction on the weight of the evidence.

I am unable to escape the conclusion that the jury must have been misled by this instruction, for I cannot find any evidence which would satisfy a jury beyond a reasonable doubt that appellant made an assault upon the woman with intent to rape her. It is, to my mind, preposterous to say that under this evidence the commission of the crime has been proved beyond a reasonable doubt. Therefore I dissent.

Mr. Justice HART concurs.