In the Matter of the Integration of the Bar.

5-166                                          259 S. W. 2d 144

Opinion delivered April 27, 1953.

Rehearing granted July 6, 1953.

GEORGE ROSE SMITH, J. A substantial majority of all the actively practicing lawyers in the State have petitioned this court to create an integrated bar association. It is our conclusion that the proposal should be approved.

The conception of an integrated or unified bar originated in the American Judicature Society in 1914. This form of bar organization has, with comparative rapidity, won widespread public approval and now exists in the majority of the states. Its distinguishing characteristic is the requirement that every attorney be a member of the organization and be a contributor to its support.

In a number of states the bar has been integrated by rule of court, upon the theory that the supervision of the practice of law is so essentially a judicial function that the courts are free to act without statutory authority. Full discussions may be found in *Petition of Florida State Bar Ass'n,* 40 S. 2d 902; *Re Integration of Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N. W. 265, 114 A. L. R. 151; and *Integration of Bar Case,* 244 Wis. 8, 11 N. W. 2d 604, 12 N. W. 2d 699, 151 A. L. R. 586. This is not a controverted issue in the present proceeding, for we have this express language in our constitution: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys-at-law." Amendment 28. It is well known that this amendment was prepared and sponsored by the advocates of integration.

Amendment 28 was adopted in 1938, but we have heretofore been reluctant to create an all-inclusive bar association, as it has not previously been demonstrated that a majority of lawyers favored the step. In the face of the present petition it is no longer possible to believe that the move is not desired by most of those who will be directly affected. It appears from the information accompanying the petition that there were 1,129 lawyers engaged in the active practice when the petition was cir-

culated. Of these, 803 signed the petition, and of the 326 who did not join in the movement only 61 affirmatively offered objections. Thus the proposal is endorsed by more than 71% of the practicing lawyers and is opposed by less than 6% of them.

Yet the petition was presented primarily to practicing lawyers only. Our roster of licensed attorneys includes about a thousand people who do not actually practice law, and when the petition was received it was felt that the sentiment of the active bar alone should not be taken as conclusive in a matter affecting every one having a license. In order to give every licensed attorney an opportunity to express his preference we instructed the clerk of the court to mail a ballot to each of the 2,371 licensed attorneys whose names are on our rolls. The response was relatively light, as less than half took the trouble to sign and mail the postcards that were provided. It would not have been surprising had the vote been against integration, for the inactive attorneys might have attached primary importance to the fact that the proposal would increase their annual contribution for ostensibly belonging to a profession which is not their livelihood. Even this ballot, however, favored integration by a vote of 592 to 455. This vote, although small, is certainly large enough to be representative and confirms the petitioners' belief that the majority of lawyers will welcome the move.

In a matter that is of more direct concern to the bar than to the bench we are naturally inclined to give effect to the wishes of a clear-cut majority of our practitioners. Nevertheless the decision involves the exercise of judicial discretion, and we should not be willing to approve the petition if it were shown that the plan is not to the best interest of the public and the bar. That showing has not been made by the few lawyers who responded to our invitation to file briefs in the case.

Unquestionably the experience gained in other states is the best guide for determining whether the plan will be beneficial in Arkansas. We are much impressed by the fact that no state having an integrated bar has ever

returned permanently to the alternative of a voluntary association that is supported only by those lawyers who are willing to devote their time and effort to projects that are really the responsibility of the bar as a whole. Oklahoma went back to the old system temporarily when the statute integrating the bar was repealed, but the arrangement had proved so popular that it was reinstated by rule of court. In the Florida case cited above it was said: "Letters received from the States in which the integrated bar has been tested, recommend it as a vast improvement over the voluntary association and proclaim that they would under no circumstances return to the old system."

The few opponents of the present petition object mainly to the fact that membership in the organization is to be compulsory; this is said to be akin to a closed shop, to be undemocratic, and to border on socialism. It seems evident, however, that some degree of compulsion is implicit in the language of Amendment 28, which directs this court to make rules regulating the practice of law. Any form of regulation imposes at least some restraint on the persons whose conduct is regulated, and if we were required to wait for complete unanimity among the members of the bar there would obviously be no need for the rules when finally adopted.

Furthermore, this proposal is clearly one that affects the public interest, and it is a commonplace truth that in such matters every individual cannot enjoy completely unrestricted freedom of action. The integration plan does not compel any attorney to attend the meetings of the association nor control in any other way his own free choice of conduct. All that he is required to do is to contribute a small sum annually, tentatively suggested as five dollars, to assist the association in performing its duty to the public. There are undoubtedly many ways in which the law and the administration of justice—matters of vital concern to every attorney—may be improved. We do not think it unreasonable to require every attorney to assume at least a minimum share of the collective responsibility.

At this time we express our approval of the request for an integrated bar. This petition, as the first step toward integration, asks only that certain changes be made in Rules 6 and 10. The suggested amendments would still leave open a number of issues, such as the procedure by which the new organization is to be brought into being, the manner in which its constitution or governing rules are to be prepared and adopted, the status of licensed attorneys not actively engaged in the practice of law, and the exact annual license fee that should be imposed to support the association. To the end that integration may be accomplished by January 1, 1954, we request the sponsors of this petition and all other interested attorneys to submit detailed recommendations to the court by October 1 of this year.

GRIFFIN SMITH, Chief Justice, dissenting. What has so frequently been referred to as the genius of the American people, of which Arkansas is truly typical; —the spirit of our political, social, and professional institutions;—the concept upon which human dignity reposes, being intrinsic attributes fervently thought to have become inseparably associated with independence and man's right to achieve his own destiny within appropriate boundaries;—these virtues, disclosing the aptitude of spirited people to intuitively and accurately distinguish correct conduct as opposed to enslaved error, and to engage in a chosen calling unhampered by the retarding clutch of coercion,—all were so universally recognized, and had become so much a part of nearly the whole of those whose names spell character and trustworthiness on the Rolls of our Certified Bar, that this Court's overreaching writ of paternalism will come in the nature of a profound shock to lawyers who had little reason to *fear*, and small ground to *suspect*, that upon the vote of twenty-five per cent of more than 2,300 licensed attorneys the remaining seventy-five per cent would, by juridical fiat and transfusion, be maneuvered into a position where plenary command and supervisory authority would merge into a process of unappealable decision.

Since the morning of recorded Time there have been two conflicting and violently contending theories of control: One functions through understanding, cooperation, liberty of thought, and a willingness to conform to accepted rules of conduct. The other theory relies upon force, capricious will, dogmatic expedition of purpose, and the tyranny coexisting with entrenched power.

Accumulated discontent ushered in an historic transaction in 1215. From the thirteenth century until 1933 progressive thought carried with it a recognition of non-molestation when the law itself was not infringed. Freedom is the culmination of self-determination and man's right to act for himself as one capable of constructive reflection in a society dedicated to intellectual development.

From enshrined moorings of safety long cherished we are rapidly becoming a nation governed by miscellaneous boards and commissions; by inquisitorial agencies operating under a flimsy pretext of legal authority approvingly referred to as the Rulemaking Power. It often feeds on sensation, acquires strength through publicized inquisition, is tolerated because of the law's delay, and it supplies within the social structure at the national level a refuge for intellectual introverts who are lacking in the capacity to succeed upon their own merits, and therefore envy without reason the person who has.

· · · · ·

The stratocratic command addressed to attorneys begins with an assertion that ". . . a substantial majority of all the active practicing lawyers . . . have petitioned this court to create an Integrated Bar. . . . Authority for the procedure is to be found in Amendment No. 28 to the Constitution."

That there *was* a majority petition is an unassimilated conclusion. It rests upon the proposition that certain attorneys in most if not all of the seventy-five counties—*attorneys selected by the proponents of integration*—were permitted to give *ex parte* information regarding activities of their brethren at the Bar.

For example, *A* receives a letter asking for a list of the "active" practitioners in town or city *B*. *A* compiles this list, omits whom he pleases, and replies that *we* are the ones who are to be considered. By this process more than half of the enrolled attorneys were relegated to inactivity by this combination of physical and psychological overture attending inquiry. The result, in effect, was repeatedly rejected by the Court.

It was of small concern that old-timers who appeared in court only occasionally, or the newly-licensed ones who had not then been afforded the opportunity to make an impression in this highly competitive field, were treated as discarded superannuates or fledglings by chance. By whatever method the result was achieved, (and this is said without the slightest intent to impugn the motives or asperge the sincerity of any individual or group) it differed one-half from the list maintained by this Court—the list of men and women in respect of whose qualifications the Supreme Court as a constitutional tribunal had said were worthy. It is significant that when the Clerk of this Court sent ballots to *all* who had been certified, *including the majority upon which reliance is now placed,* less than six hundred expressed a preference for regimentation.

Some of the members of this Court have not forgotten the oral presentation when integration was requested under authority of Amendment No. 28. One of the State's foremost advocates—a man who had participated in promulgation of the Amendment and whose precise phraseology was accepted by those who at election pressed the issue, was asked why, if Amendment 28 conferred integration authority, some language affirmatively expressive of that purpose was not included; and he answered—with that commendable frankness and straightforwardness for which he was known—that the matter was intentionally left out through fear that the people would not adopt the Amendment. We are now supplying the calculated omission thought by the advocates of Amendment 28 to be too risky for popular scrutiny.

The Arkansas Bar Association was conceived by men of professional vision who as leaders felt that by voluntarily coming together and by holding annual conventions matters of mutual interest could be discussed. Its freedom from judicial molestation has been complete. There was no domination by individuals who in consequence of an election under the Constitution were distinguished by the recorded insignia of office. This is as it should be.

But under today's decree the majority of this Court is saying or clearly implying that no person heretofore trusted with a certificate of enrollment may continue to practice law unintegrated. Rules must be made, a superintending board or instrumentality of control established, dues in whatever sum thought appropriate will have to be paid, a financed secretariat will no doubt be created—all under penalty of disbarment for obstinate independence. All this because ballots signed by less than a fourth of the 2,300 men and women we have said were morally fit to represent clients and sufficiently versed in the law to earn reasonable fees—all because this minority has been given a value so chimerically inflated as to dwarf the conception of self-determination.

ED. F. McFADDIN, Justice (Dissenting). In ordering the integration of the lawyers of Arkansas, the majority of this Court is taking a long step down the road toward a judicial regimentation of the legal profession in this State; and I cannot agree to that step. Hence this dissent, and some of the reasons that impel it.

The attempted justification for such integration is found in the first sentence of the majority opinion, which reads:

"A substantial majority of all of the actively practicing lawyers in the State have petitioned this Court to create an integrated bar association."

The fact—if it be a fact—that a majority of the actively practicing lawyers in the State have asked for this integration is indeed a poor justification for judicial action. Courts do not decide cases according to popular will; nor

may Courts submit pending problems to voting to determine how a case should be decided. (*Elston* v. *Wilborn,* 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R. 179.) Even when both parties desire a decree annulled, the Court still has discretion to refuse the prayed relief. (*Dunn* v. *Dunn,* 222 Ark. 85, 257 S. W. 2d 283.) Even when the Attorney General of Arkansas offers to confess error in a criminal case, this Court still examines the record to see if the confession is well taken, and in some instances, has refused to receive the confession of error. *Skaggs* v. *State,* 88 Ark. 62, 113 S. W. 346.

So, if *all* the lawyers licensed to practice by this Court had requested integration, nevertheless this Court should consider whether discretion would be abused in granting the request, even assuming the Court has the constitutional right to decree integration. In short, this Court cannot, like Pilate, wash its hands of responsibility by saying a "substantial majority" has asked that we do this.

When we consider this matter on its merits, stripped of the alleged "majority petition" argument, we find that this Court, by a majority of the Justices, is now compelling all licensed attorneys in this State to join a compulsory bar association. Under the sugar-coated word "integration," the majority is accomplishing a judicial regimentation of the legal profession. We have never had such a compulsory bar association in Arkansas, so this is certainly a drastic change. In considering any change, it is wise to always consider the proposal under three points:

(a)   the existing evil;

(b)   the proposed remedy; and

(c)   will the proposed remedy alleviate the existing evil without causing other and greater evils? Unless any proposed change can pass the test of the three points above, then the change should not be made; so I present my views under these three points.

(a)   *"The Existing Evil."* The majority opinion states that we have 2,371 attorneys licensed by this

Court.[1] The proponents of integration say that *all* the licensed lawyers should be required to contribute to the support of the bar association. My investigation discloses that there are 1,070 lawyers who are, at the present time, members of the voluntary bar association.[2] So really the "existing evil" is that only 1,070 lawyers are supporting the voluntary bar association, and, therefore, that association cannot extend its activities as much as some desire.

(b) *"The Proposed Remedy."* To remedy the aforesaid "evil," it is proposed that the Arkansas Supreme Court compel every lawyer licensed by this Court to pay an equal pro rata part of all of the expenses of the compulsory bar association. Polish and paint the proposal as much as you will, the hard fact remains that this "integration" is a form of taxation which will be required for the privilege of being a licensed attorney; and the tax money is to go for enlarging and expanding of various activities.[3]

---

[1] Some time has elapsed since the petition for integration was filed by 803 lawyers, which petition stated that there were only 1,129 lawyers engaged in the active practice in this State. Some time has also elapsed since the Clerk of this Court mailed ballots to each of the 2,371 attorneys licensed by this Court and received returns from 592 favoring integration and 455 opposing it. But for the purposes of this opinion, I treat all of the figures as current figures, just as did the opinion of the majority of this Court.

[2] I use the term "voluntary bar association" to indicate the present Bar Association, which has been in existence since 1899. I use the term "compulsory bar association" to indicate the one that this Court is about to create in granting this petition for integration.

[3] Part of the argument advanced by the proponents of the integrated bar, as filed in this Court, reads as follows:
"Some benefits to be derived are:
"1. A central office can be maintained at Little Rock with a paid, full-time secretary to assist lawyers over the state· in their practice, to eliminate needless trips to Little Rock.
"2. Standard legal forms can be furnished. In Oklahoma, the annual dues of $10.00 cover both the Law Review subscription and weekly advance sheets of the Supreme Court opinions. We pay each year a license fee of $1.00, bar association dues, $6.50, plus $12.50 for the Reporter, or a total of $19.00.
"3. Much can be done to curtail the unauthorized practice of the law. Sound public relations can be developed, to eliminate certain prejudices against lawyers.
"4. Since no segment of lawyers can control the integrated bar, representative officers can speak for a unified bar.
"5. Needed projects can be undertaken. The bar will be able to do its work better, and the public will benefit by an effective organization. . . ."

I am a member of the present voluntary bar association, and have paid my dues ever since becoming a member, shortly following World War I. I have paid my dues voluntarily; and I do not think that others should be required to pay who do not so desire. Compulsion is a poor substitute for voluntary action, regimentation is the direct antithesis of Democracy: yet compulsion and regimentation constitute the proposed remedy in this case.

(c)  *"Will the Proposed Remedy Alleviate the 'Existing Evil' Without Causing Other and Greater Evils?"* The proposed remedy will alleviate the "present evil": yes, it will get the money to operate a greatly expanded machine, because when the Supreme Court orders every licensed attorney to pay a certain amount of money at stated intervals, then the attorney must pay such amounts or lose his license: so it is clear that the compulsory tax will bring in the money. But that is only a small part of the question we now are considering.

The large question is, "*. . . will the proposed remedy cause other and greater evils?"* I am convinced that it will. The very word "compulsory" bar is obnoxio to the legal profession, and the fact that it is a *compulsory bar* is sufficient in itself to be a preponderating evil.

According to the majority opinion, there are 1,129 lawyers actively engaged in the practice in this State. We now have 1,070 members of the Bar Association of Arkansas, our present voluntary bar, which has been in existence since 1899.[4] Our voluntary bar association has had a steady growth.[5] Each year when we meet in annual session—usually at the Arlington Hotel in Hot Springs—we have the feeling that we are attending as voluntary members because we love our profession, and not because some court order has compelled us to be members. If a court can compel a lawyer to join an asso-

---

[4] On Page 266 of Vol. 6 of the Arkansas Law Review, there may be found the name of every President of the Association from 1899 to 1952.

[5] The membership figures of the voluntary bar association, as furnished me, for the past several years are as follows: March 10, 1953, 1,070 members; Jan. 18, 1952, 939 members; June 27, 1951, 925 members.

ciation, then a court order can compel a lawyer to attend the meetings. What kind of meetings would those be in a free and Democratic country?

When this Court requires every lawyer to join the compulsory bar, then every substantial thing that the compulsory bar may hereafter do will, likewise, be subject to the approval or disapproval of this Court. Thus there may be assumed by this Court the responsibility to see that all those whom we compel to be members of the compulsory bar will be accorded fair and equal treatment. In the light of the foregoing, the following matters occur to me:

(1) The proposed constitution of the integrated bar, after it shall have been adopted by the bar, will undoubtedly be submitted to this Court for final approval.

(2) This Court may make a requirement that all attorneys be afforded an equal opportunity to participate in the drafting of the constitution; or if the constitution be adopted by a few lawyers (appointed in some manner not yet determined) and then submitted to the entire bar for adoption or rejection, even then the constitution will undoubtedly be submitted to this Court for final approval.

(3) This Court should see that a place of meeting be fixed for the compulsory bar at which all members of the compulsory bar may be in attendance without violating any of our racial segregation laws.

(4) This Court should see that all sections of the State are afforded equal representation on the governing board of the compulsory bar.

(5) Finally, this Court should consider what is its wish and pleasure about the continuation of the present voluntary bar of Arkansas. Will the Court forbid lawyers from joining a voluntary bar? What is the advantage of having a compulsory bar if there is also to be a voluntary bar?

When the Court considers every one of these matters and acts on them, where is any freedom left to the lawyers?

The foregoing are only a few of the evils that are inherent in the "proposed remedy" of integration. I submit that these evils are far greater than the present one, where 1,070 lawyers are in a fine voluntary bar association, and only 592 lawyers of the entire 2,319 licensed by this Court have voted for integration. Under the proposal, the lawyers lose their freedom and become subject to judicial rule. Under the constitution of the present voluntary bar, judges cannot hold office in the association, and that is a wise provision. But, under the integrated bar proposal, the Supreme Court Justices become the rulers of the bar.

I cannot agree to this proposal for an integrated bar.

## ON REHEARING

GEORGE ROSE SMITH, J., on rehearing. Two principal points are made in the various briefs filed in support of the request for a rehearing. First, it is said that a bar association is a labor union and that therefore an integrated bar would be a closed shop, in violation of Amendment 34 to the constitution. This argument is wholly without merit. Labor unions are organized primarily for the purpose of bargaining with management in the matter of wages, hours of employment, working conditions, etc. A professional organization such as a a bar association does not represent its members in these matters and bargains with no one. It is obviously not a labor union.

Second, it is said that most of the members of the bar are opposed to integration. This, if true, is a valid argument, for our opinion of April 27 was occasioned by the fact that far more than half of our active attorneys were urging us to integrate the bar. As we then said: "In a matter that is of more direct concern to the bar than to the bench we are naturally inclined to give effect to the wishes of a clear-cut majority of our practitioners."

After the announcement of our first opinion the Arkansas Bar Association, which had sponsored and circulated the petition for integration, adopted at its annual meeting a resolution which in effect requests us to reject its petition. More than half of the sixty-three lawyers whose names appear on the principal brief on rehearing had signed the petition for integration. Acting upon the assumption that such complete changes of position were not lightly decided upon, we directed our clerk again to submit the question to all licensed attorneys. In this poll the vote was 489 for integration and 1,003 against it, confirming the stand now taken by the Bar Association.

We reaffirm the principles approved in our original opinion, and in accordance therewith we again give effect to the view that prevails among a decided majority of our attorneys. The petition for rehearing is granted, and the petition for integration is denied.

GRIFFIN SMITH, C. J., and McFADDIN and MILLWEE, JJ., concur.

ED. F. McFADDIN, Justice (concurring). I heartily concur with the result finally reached in this matter: we now have a unanimous Court denying the Petition for Integration of the Bar.

Since this matter of integration has been pending for so long a time, I desire to place of record some facts that may not have been mentioned; and I now list them in chronological order:

1. The records of this Court show that on June 26, 1944, a Committee composed of J. D. Head of Texarkana, J. F. Loughborough of Little Rock, and Abe Collins of DeQueen, presented to this Court the motion of the Arkansas Bar Association requesting that this Court order the integration of the Bar. That motion was taken under consideration.

2. Because many lawyers were in the Armed Forces in 1944, this Court decided to await their return before dealing with the matter of integration. Then in 1947,

1948 and 1949, petitions were circulated [1] favoring integration; and in 1950 the said petitions were filed in this Court, purporting to be signed by 803 attorneys. These are the petitions mentioned in the majority opinion of this Court of April 27, 1953. Oral arguments were heard in 1950 for integration, and briefs pro and con were directed to be filed by September 30, 1950.

3.  In the fall of 1951, this Court conducted a ballot by mail on this matter of integration: a ballot was sent to each of the 2,371 attorneys enrolled in this Court. The result of that ballot was: 592 for integration and 455 against integration; showing that only 1,047 of the 2,371 attorneys voted on the question.

4.  The Court kept the matter of integration in reserve; and on April 27, 1953, there was delivered the majority opinion which ordered integration. Petitions for rehearing were duly filed. Four printed briefs containing the names of several scores of attorneys and several County Bar Associations, were filed in opposition to the ordered integration. No brief was filed favorable to integration during this time for rehearing.

5.  The Bar Association of Arkansas—the voluntary Bar of this State—met in annual session on May 15, 1953, and by vote of 195 to 165 adopted the following Resolution:

"WHEREAS, on April 27, 1953, the Supreme Court of Arkansas, in its opinion In the Matter of the Integration of the Bar (No. 166), by a divided court expressed its 'approval of the request for an integrated bar,' the 'distinguishing characteristic' of which is that every attorney must be a member of an all-inclusive bar association and contribute to its support, and

"WHEREAS the Bar Association of Arkansas, in annual convention assembled—believing (1) that the majority of the practicing lawyers in this State are opposed to an integrated bar, (2) that membership in a bar association should be voluntary, not compulsory, (3)

---

[1] That the petitions were circulated during 1947, 1948 and 1949 is stated in a letter sent by Honorable Abe Collins to the Justices of this Court under date of April 22, 1950.

that no lawyer should be compelled, over his objection, to support the activities of a bar association, (4) that the Supreme Court of Arkansas, under Amendment No. 28 to the Constitution of Arkansas, has ample power to regulate the 'practice of law and the professional conduct of attorneys-at-law' and has effectively exercised that power by establishing the Bar Rules Committee, which has given general satisfaction, and (5) that there is no necessity or occasion for the integration of the bar, —considers that the Supreme Court of Arkansas erred in said opinion, and

"WHEREAS said opinion of April 27, 1953, is now pending on rehearing,

"NOW, THEREFORE, BE IT RESOLVED that the Bar Association of Arkansas, believing that every licensed lawyer in this State is a party to this proceeding, urges the Supreme Court of Arkansas to reconsider its opinion in this matter and, on re-hearing, to reverse said opinion and rescind its approval of the request for an integrated bar."

6. The Justices, making the majority opinion, decided to again submit the question of integration to all the enrolled attorneys of this Court. The result of such June, 1953, ballot by mail was: opposed to integration, 1,003; favorable to integration, 489. With these results, the previous majority, that made the opinion of April 27, 1953, has joined the previous minority; and we now have a decision by a unanimous Court denying the integration of the Bar. So after nine years—June, 1944, to July, 1953—this Court has reached a final decision on this matter of integration.

In the foregoing I have given only a factual and chronological listing of events. In the supplemental opinion on rehearing it is stated that the previous majority reaffirms "the principles approved in our original opinion." I reaffirm the statements contained in my original dissent. The resolution of the Bar Association

of Arkansas—as heretofore copied—contains the arguments against integration which seem to me to be correct.

MINOR W. MILLWEE, Justice (concurring). I fully agree with what is said in the supplemental opinion. As one of the four judges who joined in the two separate orders for a poll to ascertain the sentiment of Arkansas lawyers on the question of integration, I feel constrained to add a few words.

It has been my conviction from the beginning that the matter of integration should be determined in accord with the will and wishes of a majority of the legal profession. So I proudly bear up under the censure of my dissenting brethren for my belief that the matter should be resolved by the hallowed democratic principle of majority rule. This court follows that principle in passing on matters which involve grave questions including the right to life itself. Our legislatures, state and national, pursue it in making the laws under which we must all live. In my humble opinion, the adherence by some governments to the reverse of that great American principle is the fountain head of many of the ills that beset mankind today.

I entertain no strong feelings for, nor pet prejudice against, integration. Perhaps I am too naive, but it simply had not occurred to me that I should drop the role of judge, assume that of an advocate and be guided by personal feelings in a matter of such vital concern to the lawyers of Arkansas.

Nor do I concur in the strange concept that an election is meaningless insofar as the will of the majority is concerned unless everybody eligible to do so sees fit to cast a ballot. This idea seems to find more favor in certain foreign jurisdictions where every voter is forced to cast a ballot—and only one way. Under our democratic system, we accept as decisive the verdict of a majority of those who, being afforded full opportunity to do so, voluntarily cast their ballot upon an issue.

I am still of the opinion that Amendment 28 to the State Constitution imposes upon us both a power and a duty to act in the premises. To me it seems fundamental that such action should be resolved solely in compliance with the will of the bar and in total disregard of any bias of this bench. It is clear from the poll last taken that a majority of the lawyers of Arkansas do not favor integration at this time. I gladly and respectfully accede to and proclaim their wishes.