## IN RE: PETITION OF THE ARKANSAS BAR ASSOCIATION TO AUTHORIZE PAYMENT OF A REFERRAL FEE TO ITS LAWYER REFERRAL SERVICE

95-1323                                                    913 S.W.2d 768

Supreme Court of Arkansas
Opinion delivered January 22, 1996

*William A. Martin*, Exec. Dir. of the Arkansas Bar Ass'n, by: *Ann West.*

PER CURIAM. The Arkansas Bar Association, by and through its Lawyer Referral Service Committee, has petitioned this court pursuant to Ark. Code Ann. § 16-22-101(a) (Repl. 1994) for approval of the operation of its Lawyer Referral Service. The Arkansas Bar Association seeks approval of a referral fee of ten percent of any fee over $500.00 collected by an attorney who receives the fee as a result of a referral given by the Arkansas Bar Association's Lawyer Referral Service.

■ It has been a longstanding custom and practice for the court to refer requests of this nature to our respective committees for study, comment, and recommendations to the court. Accordingly, the Arkansas Bar Association's petition is referred to the Committee on Professional Conduct. The committee is to furnish the court within a reasonable period of time its recommendations as to the ethics of the proposal.

DUDLEY, J., concurs.

ROBERT H. DUDLEY, Justice, concurring. The Arkansas Bar Association operates a Lawyer Referral Service that collects an enrollment fee from participating attorneys, but, at this time, does not collect compensation for referrals. It seeks approval by this court of a referral fee of ten percent of any lawyer's fee over

$500.00. The court has today referred the petition to the Committee on Professional Conduct for a recommendation on the ethics of the proposal. I concur, and write this separate opinion because this petition presents part of a dilemma that faces this court from time to time.

The Arkansas Bar Association is a voluntary non-profit association of attorneys supported primarily by annual dues paid by its members. It was conceived by attorneys with a grand professional vision who, as leaders of the bar, felt that by voluntarily coming together and holding annual conventions they could discuss various issues and give leadership in matters relating to the improvement of justice. Through the years the Arkansas Bar Association has well served the bench, bar, and the State. However, because the Arkansas Bar Association is a voluntary association, the responsibilities of the association fall only on those lawyers who are willing to devote their time, money, and efforts to the association's various projects.

All attorneys are required to pay annual license fees to this court in order to maintain their attorneys' licenses, and in so doing, automatically become members of the Bar of Arkansas. The Bar of Arkansas funds many of this court's operations that are performed for the improvement of the Bar. Two examples are the Committee on Professional Conduct and the Client Security Fund. The costs of the operations of the Bar of Arkansas are shared by all licensed lawyers.

On a number of occasions the Arkansas Bar Association has petitioned this court to create and fund, from the Bar of Arkansas, many of our important programs. As an example, the Client Security Fund was created and funded after a petition from members of the Arkansas Bar Association. When this court first created the Client Security Fund, we deposited $2.00 of every lawyer's annual license fee into the fund. *See In re The Client Security Fund*, 254 Ark. Appendix 1075, 493 S.W.2d 422 (1973) (per curiam). Over the next twenty-two years, we raised the amount of the annual fee that was deposited into the fund to $4.00 and then to $5.00; now it is $10.00. *See In re The Client Security Fund*, 291 Ark. 647, 722 S.W.2d LVIII (1987); 300 Ark. 643, 782 S.W.2d 357 (1989); 306 Ark. 656 (1991); and 310 Ark. 812, 832 S.W.2d 815 (1992) (per curiam). The cost of this

court's operations through the Bar of Arkansas has continually risen as new programs are added. This court's budget from license fees from the Bar of Arkansas is now in excess of one-half-million dollars each year. *See In re Bar of Arkansas License Fee,* 317 Ark. Appendix 686, 878 S.W.2d 409 (1994) (per curiam). It has been necessary for us to raise annual license fees from $2.00 in 1955, to $17.00 in 1972, *see In re Supreme Court License Fees,* 251 Ark. Appendix 800, 483 S.W.2d 174 (1972) (per curiam); to $20.00 in 1981, *see In re Supreme Court License Fees,* 270 Ark. Appendix 1020 (1980) (per curiam); to $25.00 in 1985, *see In re Attorney's Annual License Fees,* 284 Ark. Appendix 580, 679 S.W.2d XCI (1984) (per curiam); to $50.00 in 1988, *see In re Penalty for Late Payment of Bar of Arkansas Membership Dues,* 294 Ark. Appendix 663, 740 S.W.2d LXII (1987) (per curiam); and finally, to $100.00 today. *See In re Bar of Arkansas License Fees,* 317 Ark. Appendix 686, 878 S.W.2d 409 (1994) (per curiam).

From time to time, the Arkansas Bar Association asks that we create and fund new programs. Most of the new programs increase the cost of operating the Bar of Arkansas. Today's petition would not directly increase the cost of operating the Bar of Arkansas, but it does give the opportunity to discuss the dilemma we face.

It seems that if we continue to raise license fees for the Bar of Arkansas at the rate required in the past few years, it will ultimately cause a loss of membership in the Arkansas Bar Association. Perhaps it is time to again re-evaluate the merits of an all-inclusive, or unified or integrated, bar.

The concept of a unified or integrated bar originated in the American Judicature Society in 1914. This form of bar organization has won widespread public approval and now exists in the majority of states. Its distinguishing characteristic is the requirement that every attorney be a member of the organization and contribute to the support of all bar activities.

No state having an integrated bar has ever returned permanently to the alternative of a voluntary association that is supported only by those lawyers who are willing to devote their time and money to projects that are really the responsibility of the bar as a whole.

This court has the authority to order creation of such a bar. *In re Integrating the Bar*, 222 Ark. 35, 259 S.W.2d 144 (1953). In fact, in 1953, this court took the first step in creating a unified bar, *id.* at 39, 259 S.W.2d at 146, but, after taking a poll of the members of the Bar of Arkansas granted rehearing and denied the creation of a unified bar. *Id.* at 47, 259 S.W.2d at 151.

It has been forty-two years since we rejected the petition for a unified bar, and there has been no petition for an all-inclusive bar in recent years. A unified bar is of more direct concern to the bar than to the bench, and the members of this court are likely to give effect to the wishes to a majority of the members of the bar. It would seem that leaders of the Bar should again examine the concept of a unified bar, and, if there is a consensus, consider filing a petition asking this court to take the first steps to create such a bar. It would most likely help solve the financial difficulties faced by two bars, be more economical, and provide better services to all members of the Bar.